609 So.2d 94 (1992)
Marilyn E. HEINRICH, Appellant,
v.
John J. HEINRICH, Appellee.
No. 90-1250.
District Court of Appeal of Florida, Third District.
November 24, 1992.
*95 Floyd Pearson Richman Greer Weil Brumbaugh & Russomanno and Bruce A. Christensen, Diane Wagner Katzen and Robert J. Fiore, Miami, for appellant.
Koppen, Watkins, Partners & Associates, Miami, and Alan S. Walters, Miami Beach, for appellee.
Before HUBBART, COPE and GODERICH, JJ.
PER CURIAM.
Marilyn E. Heinrich, the former wife, appeals the final judgment entered in the action for dissolution of the parties' marriage. We affirm in part and reverse in part.
The wife first contends that the trial court erred by denying equitable distribution to her from the John J. Heinrich Insurance Trust, a trust established during the parties' marriage. The wife's point is well taken.
At the time the final judgment was entered, the wife was 64 years old and the husband, John J. Heinrich, 65. This was a successive marriage for both parties, and the marriage lasted ten years. The wife is a retired schoolteacher who did not work during the parties' marriage. The husband's income during the marriage was about $65,000 per year.
One year after the parties' marriage, the husband created the John J. Heinrich Insurance Trust ("John Heinrich Trust"). The insurance aspects of the trust are irrelevant here and need not be considered further.[1]
During the marriage, the parties placed most of their assets in the trust. The husband was the initial trustee. Upon the husband's demise, the wife and one of the husband's sons from a prior marriage were to serve as successor co-trustees. The wife was to receive all of the trust income for her life and the co-trustees were also given the discretion to invade twenty-five percent of the principal for the wife's medical expenses, if necessary. Upon the wife's demise, the principal balance was to be distributed to two of the husband's grandchildren.
The trust corpus included the sole checking account utilized for marital purposes by the parties; a money market brokerage account; a savings account; stock; the marital home in Miami Lakes, Florida; and a one-half interest in the parties' second residence in Melbourne, Florida.[2]
The trial court ruled that the John Heinrich Trust was the husband's separate property and not subject to equitable distribution. The court concluded that the trust corpus had been derived from the husband's separate income and assets, and that the trust corpus should be treated exclusively as the husband's separate property. We disagree.
Under the equitable distribution statute, marital assets include "[a]ssets acquired... . during the marriage, individually by either spouse or jointly by them... ." § 61.075(5)(a)(1), Fla. Stat. (1991). The statute also states, "All assets acquired ... by either spouse subsequent to the date of the marriage and not specifically established as nonmarital assets ... are presumed to be marital assets... . Such presumption is overcome by a showing that the assets ... are nonmarital assets... ." Id. § 61.075(7).
Since the John Heinrich Trust assets were acquired during the course of the *96 parties' marriage, they are presumptively marital assets. In order to overcome that presumption, the burden was on the husband to show that he was entitled to a special equity in the trust corpus under one or another of the tests set forth in the equitable distribution statute. § 61.075(7), Fla. Stat. (1991); Terreros v. Terreros, 531 So.2d 1058, 1059 (Fla. 3d DCA 1988). The husband argues that it was the wife's burden to show that the John Heinrich Trust corpus was marital in nature; in reality, these assets are presumptively marital, and the burden is on the husband to show the contrary.
Under the equitable distribution statute, nonmarital assets include "[a]ssets acquired ... by either party prior to the marriage, and assets acquired ... in exchange for such assets... ." Id. § 61.075(5)(b)(1). The husband testified that when the John Heinrich Trust was initially set up, he utilized approximately $62,500 of his separate premarital funds to make the initial purchases of stock for the trust. He also testified that he transferred one specific premarital stock worth $7,844 into the trust. To the extent of those contributions, the husband is entitled to a special equity in the stock held in the John Heinrich Trust. The trial court also found that the parties' Miami Lakes home (which was placed in the trust) was acquired entirely from the husband's nonmarital assets. Again, the husband is entitled to a special equity accordingly. To this extent we agree with the trial court.
We reach a different conclusion, however, with respect to trust assets purchased out of the husband's income during the marriage. The husband was the beneficiary of two family trusts, one created by his mother and the other created by his aunt.[3] The husband received $60,000 per year from the family trusts, and also had a part-time job from which he earned $5,000 per year. The wife did not work. The husband's income was deposited in the trust checking account, from which all family expenses were paid. From time to time some of these funds were used in order to acquire additional assets for the John Heinrich Trust.
Under the equitable distribution statute, nonmarital assets include "[a]ll income derived from nonmarital assets during the marriage unless the income was treated, used, or relied upon by the parties as a marital asset. ..." § 61.075(5)(b)(3) (emphasis added). In this case the annual income from the husband's separate family trusts was relied on as the family's income, along with the husband's part-time income. The monies were commingled in what was in reality the family checking account, and were used for family purposes. Under the circumstances, therefore, the husband's income was marital in nature. Assets purchased with that income for the John Heinrich Trust are therefore marital.
Proceeding on the assumption that the John Heinrich Trust assets had been acquired exclusively by the husband's separate assets, the trial court also drew the conclusion that all appreciation of John Heinrich Trust assets would also be separate property. On the facts present here, that is not so.
Under the equitable distribution statute, marital assets include "[t]he enhancement in value and appreciation of nonmarital assets resulting either from the efforts of either party during the marriage or from the contribution to or expenditure thereon of marital funds or other forms of marital assets, or both... ." Id. § 61.075(5)(a)(2) (emphasis added). Here, it was undisputed that the John Heinrich Trust's stock portfolio was selected, monitored, and traded periodically by the husband with some assistance by the wife. Appreciation of a nonmarital asset resulting from efforts by either party renders the appreciation a marital asset. Here, both participated. Appreciation of the stock portfolio was therefore a marital asset.
The trial court awarded the parties' second residence in Melbourne, Florida to the husband. The Melbourne property had been purchased during the marriage. Title *97 was taken one-half in the name of the John Heinrich Trust and the other half in the name of the wife's separate trust. The trial court found that there had been an oral agreement whereby the wife was to have supplied one-half of the consideration from her separate trust, but that she never did so.
Because the Melbourne residence was purchased during the course of the marriage, it is presumptively a marital asset. The trial court made a finding that the consideration for the purchase of the Melbourne house came entirely from the husband's premarital trusts. That being so, the trial court concluded that the Melbourne residence should be awarded to the husband.
We would have no quarrel with this finding if supported by the evidence. However, the trial testimony indicated that the consideration came from multiple sources, some of which appear to have been marital funds. (Tr. 117-18). The husband is entitled to a special equity in the Melbourne residence to the extent that he clearly shows that the consideration came from a nonmarital asset. See § 61.075(5)(b)(1), Fla. Stat. (1991). The remainder, however, is a marital asset subject to equitable distribution. See generally Landay v. Landay, 429 So.2d 1197 (Fla. 1983).
The wife argues for more extensive relief. She urges that the placement of some marital assets and some nonmarital assets into the John Heinrich Trust accomplished such a commingling that all of the assets must be deemed marital without the possibility of the husband showing a special equity in any of those assets. She relies on Basham v. Basham, 541 So.2d 118 (Fla. 3d DCA 1989) and Walser v. Walser, 473 So.2d 306 (Fla. 2d DCA 1985); see also Terreros v. Terreros, 531 So.2d 1058 (Fla. 3d DCA 1988).
To begin with, the rule of decision in the present case is supplied by the equitable distribution statute, § 61.075, Fla. Stat. (1991), which applies to actions commenced after October 1, 1988. Ch. 88-98, § 4, Laws of Fla. Earlier case law must be read in light of the later legislative enactment. As already stated, all of the trust assets acquired during the marriage are presumptively marital property. However, under the equitable distribution statute, a party can establish a special equity where, inter alia, an asset has been acquired prior to the marriage or where an asset has been acquired in exchange for such an asset. § 61.075(5)(b)(1), Fla. Stat. (1991). Here, the husband established that certain specific assets were acquired with nonmarital funds, and so the husband is entitled to a special equity to that extent. Basham and Walser involved the commingling of cash in the bank account or accounts which were used for the parties' marital income and expenses. The funds lost their separate identity and no longer represented a separate asset, or an asset exchanged for a separate asset. Under pre-equitable distribution statute case law as well as under the equitable distribution statute itself, the commingled funds are marital property.
The wife also relies on Adams v. Adams, 604 So.2d 494 (Fla. 3d DCA 1992), but that case involves a unique circumstance not present here. In Adams a securities portfolio account was used as security for the parties' borrowings by means of the parties' securities margin account, a marital asset. Adams held that the use of the portfolio account in this way caused it to lose its nonmarital character. As Adams itself suggests, however, the mere holding of securities in a brokerage account does not prevent the husband from establishing a special equity if the husband can make the showing set forth in the equitable distribution statute, i.e., the asset (a specific security) was acquired before the marriage or was acquired in exchange for a nonmarital asset. § 61.075(5)(b)(1), Fla. Stat. (1991).
Here the evidence established that the husband's premarital funds were used for the acquisition of specific assets: a portion of the stock portfolio and the Miami Lakes residence. Because such evidence satisfies the statutory test, the husband is entitled to a special equity to the extent previously stated.
As to the first issue on appeal, therefore, the final judgment must be reversed insofar *98 as it held that the trust assets and the Melbourne residence were entirely the separate property of the husband. While the husband is entitled to a special equity as set forth above, the remainder consists of marital assets which must be equitably distributed.
The wife next contends that the alimony award was inadequate. We agree. During the marital breakup, the wife relocated to the Melbourne residence while the husband remained in the Miami Lakes residence. The wife predicated her living expenses on the assumption that she would be awarded the Melbourne residence, which was owned free and clear. The trial court instead awarded the Melbourne home to the husband and ordered the wife to vacate, but made no adjustment to the alimony request to compensate for increased housing expenses. Given the husband's significantly greater income and assets, the award was inadequate. There must be a new hearing on alimony, to consider the wife's needs based on a realistic budget.[4] The court may, of course, take into account the effects of the revised equitable distribution.[5]
The wife also contends that the trial court erred in its refusal to allocate her some of the books and model automobiles collected by the parties during the marriage. The husband's principal objection was that the books and model automobiles had been paid for out of the funds in the John Heinrich Trust. Here, too, the trial court's ruling was based on the position that the John Heinrich Trust was entirely the husband's separate property and that therefore the books and automobiles should be deemed to be the husband's separate property as well. As stated previously, the John Heinrich Trust is in reality a marital asset, as to a portion of which the husband is entitled to a special equity. The bare statement that the books and model automobiles were acquired from time to time with funds from the John Heinrich Trust is not, therefore, sufficient to establish a special equity in the books and model cars. The books and model cars are subject to equitable distribution, and the trial court shall include the books and model cars among the assets subject to equitable distribution.
We affirm the final judgment insofar as it dissolved the parties' marriage. The remainder of the final judgment is reversed and the cause remanded for further proceedings consistent herewith.
NOTES
[1] The trust was set up in part to receive the proceeds of insurance policies on the husband's life after the husband's demise. The insurance policies themselves were owned by the husband individually, not by the trust.
[2] The values of the assets were approximately $110,000 for the stocks; $80,000 for the Miami Lakes home; $40,000 for the one-half interest in the Melbourne home; $12,000 for the money market fund; $4,000 for the checking account; and $1,300 for the savings account.
[3] They are, respectively, the Esther Stoft Heinrich Trust and the Freida Stoft Robinson Trust. The two trusts held about two million dollars in assets.
[4] Evidence of the nature and extent of the husband's interest in the premarital trusts is admissible on the question of the husband's ability to pay the alimony award.
[5] At the hearing the wife may raise the issue of life insurance in accordance with Sobelman v. Sobelman, 541 So.2d 1153 (Fla. 1989).