712 So.2d 1154 (1998)
Mary Lee FARRIOR, Appellant,
v.
J. Rex FARRIOR, Jr., Appellee.
No. 96-01493.
District Court of Appeal of Florida, Second District.
June 12, 1998.
*1155 David A. Maney and Lorena L. Kiely of Maney, Damsker, Harris & Jones, P.A., Tampa; and Stuart C. Markman of Kynes, Markman & Felman, P.A., Tampa, for Appellant.
A.J. Barranco, Jr. of A.J. Barranco & Associates, P.A., Miami; Robert F. Kohlman of Law Offices of Robert F. Kohlman, Miami; John R. Beranek of Ausley & McMullen, Tallahassee; and Robert W. Fields of Garcia & Fields, P.A., Tampa, for Appellee.
PER CURIAM.
Mary Lee Farrior, the wife, appeals the final dissolution of marriage and contends the trial court erred in determining that stock inherited by her and remaining in her separate name until the date of dissolution was marital property. The Wife also argues the trial court erred when it failed to award her special equity in marital properties acquired on the strength of her substantial stock holdings. We affirm the trial court's finding that the Wife is not entitled to a special equity. We conclude, however, that the stock inherited by the Wife and titled solely in her name is nonmarital property and, accordingly, reverse and remand for the trial court's reconsideration of the equitable distribution of the marital assets in light of this opinion.
This was a long-term marriage. The parties were married in 1958, when the Wife was twenty-one years old and the husband, J. Rex Farrior, Jr., was thirty-one years old and a practicing attorney in Tampa. At the time of the dissolution in 1996, the total assets for consideration by the trial court were nearly $48 million, three-quarters of that amount being stock in the Wife's name which she inherited from her family. The Husband contends that all of these assets were marital assets as the result of an oral agreement entered between the parties early in the marriage when they agreed "there is no yours or mine, it's all ours."
In its order, the trial court specifically found that the stock in question was initially a nonmarital asset of the Wife. This finding constitutes a rejection of the Husband's argument that the oral agreement, allegedly entered into prior to the acquisition of the stock, converted all assets to marital assets. Although rejecting the oral contract theory, the trial court found that the Wife's separately-owned stock became a marital asset through commingling or intermingling. This finding was based upon three separate factors: first, the parties' equal access to the stock; second, use of the stock by the parties to provide luxuries and enrich their standard of living; and third, use of the stock as collateral for joint marital debts.
*1156 We reject the Husband's argument on appeal urging the oral contract as an alternative basis for affirming the equitable distribution scheme. We are persuaded by the parties' actions during their marriage rather than by reports and explanations of their early conversations. In so holding, we agree with the view expressed by one court that concluded, "To allow general conversation between husband and wife to constitute an `agreement' between the parties, without more, is to turn the institution of marriage into an ongoing contract, the terms of which are mandated by each word spoken between the spouses." Stainback v. Stainback, 11 Va.App. 13, 396 S.E.2d 686, 691 (1990). Accordingly, we turn our review to the factors relied upon by the trial court.
First, in finding that equal access to the funds constituted an intermingling which resulted in the Wife's separate property becoming marital property, the trial court cited four cases. See Woodard v. Woodard, 634 So.2d 782 (Fla. 5th DCA 1994); Amato v. Amato, 596 So.2d 1243 (Fla. 4th DCA 1992); Crews v. Crews, 536 So.2d 353 (Fla. 1st DCA 1988); and Walser v. Walser, 473 So.2d 306 (Fla. 2d DCA 1985). Each of these cases is factually distinguishable because they involved cash deposited into joint accounts to which each of the parties had access. As explained by Amato, "funds so intermingled lose their separate identity and become untraceable." 596 So.2d at 1244 (citations omitted). In this case, the assets were stock certificates that were titled in the Wife's name alone. The stock certificates always maintained a separate identity and never became untraceable.
Additionally, the Husband's access to the stock was not equal to the access enjoyed by the Wife. While the Wife allowed the Husband to make decisions about whether the stock should be sold or traded, and even allowed the Husband to vote the stock, the stock remained titled in the Wife's name alone and was never placed in an account to which the Husband had equal access. Clearly the Wife deferred to the Husband's judgment on financial decisions related to the stock; however, the Husband's management was always dependent upon the Wife's signing of stock certificates. We can find no case, nor were the parties able to provide us with any law, that converts this arrangement into a presumption of gift as occurs when monies are deposited into a joint account and are thereby equally available to either party. Because the evidence does not support a finding that the Husband had equal access to the Wife's stock, we conclude the stock in the Wife's name did not become a marital asset by intermingling.
As a second factor, the trial court relied upon use of the stock to provide luxuries and enrichment to the parties during the marriage. Claughton v. Claughton, 483 So.2d 447 (Fla. 3d DCA 1986), cited by the trial court, held that assets may be converted from nonmarital to marital assets when they are intermingled and "used to provide luxuries for the family and enrich the standard of living." 483 So.2d at 449. Based on this holding, the Third District remanded for the trial court to determine if the husband's salary and other acquired assets became marital assets through intermingling. See 483 So.2d at 450. We conclude that Claughton does not stand for the proposition that providing luxuries and enriching the standard of living is an indication of intermingling. Rather, Claughton holds that nonmarital assets which are intermingled to provide luxuries and an enriched standard of living should be treated as marital assets.
Although we reject the trial court's interpretation of Claughton as applied to the stock itself, we hold that the trial court correctly applied Claughton to the acquisitions purchased with income from the stock. In rejecting the Wife's claim of special equity, the trial court correctly found that the many acquisitions of the parties resulted from the Wife's interspousal gift of the income from her nonmarital assets and thus became marital assets.
Third, the trial court concluded that the pledge of the Wife's individually-titled stock as collateral for marital loans resulted in the stock becoming a marital asset. In reaching this conclusion, the trial court relied upon Adams v. Adams, 604 So.2d 494 (Fla. 3d DCA 1992). Even if we were to agree *1157 with Adams, the trial court found that less than fifty percent of the Wife's separately-held stock was ever used as collateral and thus would not convert all of the Wife's stock into a marital asset. We find no other cases, however, that follow the rule advocated by the Husband. And we conclude there is no equitable basis for a rule that punishes a spouse who uses nonmarital property to finance the acquisition of marital property by then converting the nonmarital collateral to marital property. It is completely illogical to say that the pledge of $10 million in stock to secure a $100,000 debt would convert the $10 million in stock to a marital asset. To the extent our decision conflicts with Adams, we certify the conflict.
In reversing this case, we stop to applaud the trial judge's effort to reach a fair resolution in this bitter and hotly-contested dissolution action. Although we may agree that the trial court's decision appears to be fair in light of the long-term marriage, we conclude that it is not legally sustainable under the law of equitable distribution. Section 61.075, Florida Statutes (1995), sets forth the rules for equitable distribution, including definitions of marital and nonmarital property. Section 61.075(5)(b)2 specifically defines nonmarital assets as "[a]ssets acquired separately by either party by noninterspousal gift, bequest, devise, or descent, and assets acquired in exchange for such assets." We conclude the status of the inherited stock did not change during the marriage and thus continued to be a nonmarital asset at the time of the dissolution.
Having determined that the trial court erred in equally dividing all of the separately-owned stock of the Wife, we reverse the equitable distribution. Upon remand, the trial court may make certain adjustments in the equitable distribution that were not considered when it ordered the equal division of all assets. The trial court found that the Wife's stock, although it appreciated passively to a great extent, was also enhanced by the Husband's efforts. To the extent the trial court can find that this stock was enhanced through the efforts of the Husband, the enhancement would become marital property and thus subject to division. We also note that, as part of the equitable distribution, the Husband's inheritance receivable was included as an asset to be divided between the parties. Unless the Husband agreed to the inclusion of this asset to be divided with the marital assets, it appears it would be a separate asset that should be awarded to the Husband.
Accordingly, we reverse. On remand, the trial court shall redetermine the equitable distribution in conformance with this opinion.
Reversed and remanded.
PARKER, C.J., and BLUE and WHATLEY, JJ., concur.