736 So.2d 1177 (1999)
J. Rex FARRIOR, Jr., Petitioner,
v.
Mary Lee FARRIOR, Respondent.
No. 93,329.
Supreme Court of Florida.
June 24, 1999.
John Beranek of Ausley & McMullen, Tallahassee, Florida, Robert F. Kohlman of Kohlman & Mack, P.A., Miami, Florida, Bruce Rogow, Fort Lauderdale, Florida, Robert W. Fields of Garcia & Fields, Tampa, Florida, and A.J. Barranco, Jr., of A.J. Barranco & Associates, Miami, Florida, for Petitioner.
David A. Maney and Lorena L. Kiely of Maney, Damsker & Jones, P.A., Tampa, Florida, and Stuart C. Markman of Kynes, Markman & Felman, P.A., Tampa, Florida, for Respondent.
WELLS, J.
We have for review the opinion in Farrior v. Farrior, 712 So.2d 1154 (Fla. 2d DCA 1998), which certified conflict with the opinion in Adams v. Adams, 604 So.2d 494 (Fla. 3d DCA 1992). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. For the reasons expressed herein, we approve the decision of the Second District Court of Appeal.
Respondent Mary Lee Farrior and petitioner J. Rex Farrior, Jr., an attorney in Tampa, were married in 1958. At the time of their divorce in 1996, total assets for consideration by the trial court were nearly $48 million, with three-quarters of the assets in the form of stock inherited from respondent's family and held in respondent's name. In dividing the assets upon dissolution of marriage, the trial court ruled that respondent's individually titled stock was a marital asset subject to equitable distribution. This ruling was based upon three factors found by the trial court: *1178 (1) the parties' equal access to the stock constituted an intermingling of nonmarital and marital property; (2) the parties used the stock to provide family luxuries and enrichment; and (3) the parties used the stock as collateral for the couple's joint debts. The trial court relied upon Adams v. Adams, 604 So.2d 494 (Fla. 3d DCA 1992), in reaching its conclusion as to the use of stock as collateral.
The Second District Court of Appeal reversed the trial court's ruling that the stock titled solely in respondent's name was marital property. Farrior, 712 So.2d at 1155. The district court rejected the trial court's findings as to the first two factors (intermingling of assets and use of the stock) by distinguishing the cases upon which the trial court had relied. Id. at 1156. The district court rejected the trial court's conclusion as to the third factor, which is the subject of this review, and stated that it found no support, other than the trial court's reliance upon the Third District's decision in Adams, and no equitable basis for the principle that using nonmarital assets as collateral for loans converts such assets into marital property. Id. at 1156-57. The district court expressed its disagreement with the trial court's application of Adams concerning the issue of assets pledged as collateral for loans and certified conflict to this court "[t]o the extent our decision conflicts with Adams." Id. at 1157.
We begin our analysis by discussing Adams, in which one party appealed from a final dissolution of marriage and argued in relevant part that the trial court erred in refusing to distribute to her a one-half share of a securities investment account containing stocks and bonds that were given to her former husband before and during the marriage. Adams, 604 So.2d at 496. The securities at issue were held in two different accounts: a portfolio account and a margin account. Id. The margin account was used by the parties during the marriage as credit for acquiring marital assets and as funds for marital expenses. Id. The Third District disagreed with the trial court's conclusion that the portfolio account was a nonmarital asset and thus was not subject to equitable distribution. Id. The Third District found that the assets in the portfolio account and the margin account became subject to distribution through a two-step process of intermingling. Id. First, marital and nonmarital assets were intermingled within the two accounts, and thus the assets in each account "lost their separate character when they were intermingled with marital assets." Id. Second, the portfolio account was used as security for the margin account and "in effect, became co-mingled with the margin account." Id. The court found that "the portfolio account, via the margin account, became subject to distribution." Id. The Third District remanded for an award to the wife of "the same percentage distribution of the portfolio account as she received on the margin account." Id.
In this case, the Second District noted that the trial court had relied upon Adams to support the proposition that an individually titled security that is pledged as collateral for marital loans becomes a marital asset. Farrior, 712 So.2d at 1157. The Second District expressed its disagreement with Adams as interpreted by the trial court. Id. However, we read Adams to apply a narrow holding to the facts of that case rather than stating a general rule concerning nonmarital assets pledged as collateral. Here, it is undisputed that the stock in question was held in a safe deposit box rather than in a brokerage account, and the stock was never sold, intermingled with other assets, or titled other than in respondent's name. Thus, because of these distinguishing facts, the Second District's conclusion that the stock at issue in this case remained a nonmarital asset can be harmonized with the Third District's conclusion that the stock at issue in Adams became marital property after it was intermingled within a brokerage account, *1179 which was then pledged as collateral for another account.
In this court, petitioner contends that the Second District exceeded the scope of appellate review in that the court disturbed the trial court's factual findings as to marital assets without concluding that such factual findings were clearly erroneous. We do not agree. The Second District deferred to the trial court's factual findings but found, as a matter of law, that respondent's inherited assets were nonmarital assets under section 61.075(5)(b)2, Florida Statutes (1995), which provides that nonmarital assets include "[a]ssets acquired separately by either party by non-interspousal gift, bequest, devise, or descent, and assets acquired in exchange for such assets." Farrior, 712 So.2d at 1157. The Second District correctly relied upon this statutory provision in reaching the legal conclusion that "the status of the inherited stock did not change during the marriage and thus continued to be a nonmarital asset at the time of the dissolution." Id. Thus, we find no merit in petitioner's contention that the Farriors' use of the inherited stock as collateral caused the stock to become marital property. We find that petitioner's other arguments are outside the scope of the certified conflict.
Accordingly, we approve the decision of the Second District Court of Appeal in this case.
It is so ordered.
HARDING, C.J., and SHAW, LEWIS and QUINCE, JJ., concur.
PARIENTE, J., concurs with an opinion, in which LEWIS, J., concurs.
ANSTEAD, J., dissents with an opinion.
PARIENTE, J. concurring.
I concur with the majority. I write to address Justice Anstead's dissent in which he refers to this Court's "enlightened decision" in Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980), as a reason to uphold the trial court's decision in this case. Dissenting op. at 1182. Although Canakaris recognizes the discretion of a trial judge in the difficult decisions often presented in a dissolution case, we also observed in Canakaris that:
The discretionary power that is exercised by a trial judge is not, however, without limitation, and both appellate and trial judges should recognize the concern which arises from substantial disparities in domestic judgments resulting from basically similar factual circumstances. The appellate courts have not been helpful in this regard. Our decisions and those of the district courts are difficult, if not impossible, to reconcile. The trial court's discretionary power is subject only to the test of reasonableness, but that test requires a determination of whether there is logic and justification for the result. The trial courts' discretionary power was never intended to be exercised in accordance with whim or caprice of the judge nor in an inconsistent manner. Judges dealing with cases essentially alike should reach the same result. Different results reached from substantially the same facts comport with neither logic nor reasonableness.

382 So.2d at 1203 (emphasis supplied).
Nineteen years after Canakaris, I question whether, as a result of Canakaris, trial and appellate decisions provide any more predictability to litigants or to their attorneys when advising clients on probable outcomes. Flexibility in the name of discretion has often led to uncertain outcomes both of which may be "reasonable." This is not meant as a criticism of any individual judge. Rather, it is a comment on the difficulty, but yet the importance, of predictability for the litigants embroiled in a family law controversy.
The majority opinion in this case assists in ensuring the uniformity and predictability of the legal rules with regard to separately owned assets. The Coca-Cola stock at issue in this case was inherited by the *1180 wife and remained in her name throughout the marriage. Therefore, under subsection 61.075(5)(b)2, Florida Statutes (1997), the stock was clearly a nonmarital asset because it was an asset "acquired separately by either party by noninterspousal gift, bequest, devise, or descent, and assets acquired in exchange for such assets."
The stock retained its separate identity so there was no presumption that an interspousal gift was ever intended pursuant to subsection 61.075(5)(a)3. See Williams v. Williams, 686 So.2d 805, 808 (Fla. 4th DCA 1997). The husband also does not contend, nor did the trial court find, that he is entitled to a portion of the stock based on subsection 61.075(5)(a)2, providing that a marital asset includes the "enhancement in value and appreciation of nonmarital assets resulting ... from the efforts of either party during the marriage." See also Barner v. Barner, 716 So.2d 795, 797-98 (Fla. 4th DCA 1998) (no portion of the nonmarital asset became a marital asset where no significant marital labor contributed to the appreciation of the asset over the course of the marriage). The wife does not contest the husband's entitlement to the benefit of the stock that was sold throughout their marriage to fund their luxurious lifestyle or to acquire other jointly held assets. This clearly identifiable stock remained in the wife's name in a safe deposit box.
The question then becomes under what principle of law the separately acquired and vastly appreciated stock would be transformed from a clear nonmarital asset to a marital asset. Under the husband's theory, because of the wife's voluntary act of agreeing to the use of the stock as collateral, the husband would enjoy not only the benefits of what was obtained through the collateralization but further lay claim to the collateral itself. There is no principle of statutory law, case law, or equity that would transform a clearly identifiable nonmarital asset into a marital asset merely because the stock was pledged as a collateral for marital debts. The discretion accorded trial courts under Canakaris should not prevent the recognition of this clearly understood equitable and predictable principle of law.
LEWIS, J., concurs.
ANSTEAD, J., dissenting.
I respectfully dissent.
In my view the district court has essentially ruled, without saying so, that there is no evidence to support the trial court's factual finding that the stock titled in the wife's name was a marital asset. However, there was evidence to support the trial court's finding. The majority opinion simply ignores this evidence and, instead, focuses on only one of the numerous matters that the trial court ultimately considered as relevant in reaching its factual conclusion. The comprehensive analysis in the final judgment, after the receipt of extensive evidence, speaks for itself:
j. Pursuant to Florida Statutes, Section 61.075(5)(b) and (7) (1995), the Court finds that the 10,298 shares of Coca-Cola Company, the 281 shares of Trust Company of Georgia, and the 429 shares of Genuine Parts stock, as set out in Paragraph (i), were initially nonmarital assets upon the Wife's receipt of said assets; both parties have acknowledged this fact. The issue before this Court is whether these assets have become marital assets during the course of the marriage.
k. Equal access to nonmarital property by both spouses is a factor that courts can rely upon to support a finding that nonmarital property has become marital property. Walser v. Walser, 473 So.2d 306 (Fla. 2d DCA 1985); Crews v. Crews, 536 So.2d 353 (Fla. 1st DCA 1988). It is undisputed that throughout the parties' thirty-six year marriage, the Husband exercised complete control and management over all of the parties' property, including the stock titled solely in the Wife's name. The Husband controlled, managed, sold, traded, and *1181 voted the Wife's individually-titled stock. The Wife regularly executed blank stock powers to allow the Husband to exercise this control over this stock. The Wife also deferred to his judgment on any financial decisions related to this stock, as she did for virtually all of the parties' financial decisions. In essence, the Husband had equal access to the Wife's individually-titled stock. The Husband could draw on these assets, as a whole, for personal and family purposes, and in fact, did so often throughout the marriage. These factors support the Husband's claim that all of the parties' assets, including the Wife's individually-titled stock, have lost any separate identity through intermingling. See Amato v. Amato, 596 So.2d 1243 (Fla. 4th DCA 1992); Woodard v. Woodard, 634 So.2d 782 (Fla. 5th DCA 1994).
l. One factor that can indicate an intermingling of nonmarital assets within a marriage is whether those assets are used in the marriage for providing luxuries and enriching the standard of living for both spouses and their family. Claughton v. Claughton, 483 So.2d 447 (Fla. 3d DCA 1986). The individually-titled stock was used by the parties to support a standard of living for the parties and their children that could not have been otherwise obtained by reliance on the parties' combined incomes alone.
m. The use of nonmarital assets as collateral for marital debts constitutes intermingling sufficient to make the underlying collateral marital property. Adams v. Adams, 604 So.2d 494 (Fla. 3d DCA 1992). The Wife's individually-titled stock was often relied upon by the parties as collateral for numerous marital loans. Specifically, 220,372 shares of the existing 514,648 shares of Coca-Cola Company stock were either pledged as collateral for marital debts, or were obtained through the stock splits of shares previously pledged in this manner.
n. In sum, the conduct of the parties throughout the marriage shows that the Wife's individually-titled stock has become completely intermingled with all of the parties' other assets. This intermingling has created a presumption that the Wife has made a gift to the Husband of an undivided one-half interest in her individually-titled stock.
o. The Wife has asserted that she did not intend for her individually-titled stock to become marital property. However, only the fact that the inherited stock remained in the Wife's name can support this assertion. In view of the parties' actions throughout their thirty-six year marriage, the Court finds that the Wife intended for the individually-titled stock to be treated by both parties as a marital asset. She certainly intended for the Husband to manage and control her individually-titled stock, and to benefit from it.
p. The Court rejects the Wife's contention that the Chestnut Street Exchange Fund is her nonmarital property. The Husband made the decision to obtain this asset in exchange for Coca-Cola stock, and the Wife deferred to his judgment. For this reason, the Chestnut Street Exchange Fund is a marital asset.
q. The appreciation in value of the Wife's individually-titled stock was in great measure created passively by inflation, market conditions, or the general conduct of others. See Pagano v. Pagano, 665 So.2d 370 (Fla. 4th DCA 1996). Nonetheless, the appreciation in the individually-titled stock is attributable to the marital efforts of the parties, particularly through the Husband's management and oversight of the Wife's assets. Stevens v. Stevens, 651 So.2d 1306 (Fla. 1st DCA 1995); Heinrich v. Heinrich, 609 So.2d 94 (Fla. 3d DCA 1992). Because of these marital efforts, the appreciation on the Wife's individually-titled stock constitutes marital property subject to equitable distribution.

*1182 r. Based on the foregoing analysis, the Court finds that all of the parties' assets, whether titled jointly or individually, are marital assets subject to equitable distribution. Similarly, all of the parties' liabilities are marital liabilities. The Court rejects the Wife's contention that the stock inherited by her during the marriage, and titled in her name alone, should be awarded to her as her nonmarital property.
While I might agree that the fact that the stock was used as collateral, standing alone, may not justify a finding that the stock was marital property, that is not the scenario presented here. Indeed, perhaps the most telling of the trial court's findings is the finding that in "view of the parties' actions throughout their thirty-six year marriage, the Court finds that the wife intended for the individually-titled stock to be treated by both parties as a marital asset." Surely the majority is not holding that the pledging of individually-titled assets for a marital debt is not a relevant circumstance for the trial court to consider.
The holding of the majority appears to be that so long as stock is initially acquired as a separate asset and held in the name of one spouse, it can never become marital property no matter the intent of the parties or the way they treated the asset. This sounds a lot like pre-Canakaris law, law that typically favored paper titles usually held in the name of a dominating husband. See Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980). Under our enlightened decision in Canakaris, such issues became largely issues of fact based upon the parties' real-life treatment of an asset in the marriage partnership. Isn't that the issue here?
I would reframe the issue presented and find error in the district court's failure to determine whether there was sufficient evidence to sustain the trial court's factual finding. Surely, we do not want to slip back to the pre-Canakaris days.