CORRECTED OPINION
We have for review the opinion in Farrior v.Farrior, 712 So.2d 1154 (Fla. 2d DCA 1998), which certified conflict with the opinion in Adams v. Adams,604 So.2d 494 (Fla. 3d DCA 1992). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. For the reasons expressed herein, we approve the decision of the Second District Court of Appeal.
Respondent Mary Lee Farrior and petitioner J. Rex Farrior, Jr., an attorney in Tampa, were married in 1958. At the time of their divorce in 1996, total assets for consideration by the trial court were nearly $48 million, with three-quarters of the assets in the form of stock inherited from respondent's family and held in respondent's name. In dividing the assets upon dissolution of marriage, the trial court ruled that respondent's individually titled stock was a marital asset subject to equitable distribution. This ruling was based upon three factors found by the trial court: *Page 1178 
(1) the parties' equal access to the stock constituted an intermingling of nonmarital and marital property; (2) the parties used the stock to provide family luxuries and enrichment; and (3) the parties used the stock as collateral for the couple's joint debts. The trial court relied upon Adams v. Adams, 604 So.2d 494
(Fla. 3d DCA 1992), in reaching its conclusion as to the use of stock as collateral.
The Second District Court of Appeal reversed the trial court's ruling that the stock titled solely in respondent's name was marital property. Farrior, 712 So.2d at 1155. The district court rejected the trial court's findings as to the first two factors (intermingling of assets and use of the stock) by distinguishing the cases upon which the trial court had relied. Id. at 1156. The district court rejected the trial court's conclusion as to the third factor, which is the subject of this review, and stated that it found no support, other than the trial court's reliance upon the Third District's decision in Adams, and no equitable basis for the principle that using nonmarital assets as collateral for loans converts such assets into marital property. Id. at 1156-57. The district court expressed its disagreement with the trial court's application of Adams concerning the issue of assets pledged as collateral for loans and certified conflict to this court "[t]o the extent our decision conflicts withAdams." Id. at 1157.
We begin our analysis by discussing Adams, in which one party appealed from a final dissolution of marriage and argued in relevant part that the trial court erred in refusing to distribute to her a one-half share of a securities investment account containing stocks and bonds that were given to her former husband before and during the marriage. Adams, 604 So.2d at 496. The securities at issue were held in two different accounts: a portfolio account and a margin account.Id. The margin account was used by the parties during the marriage as credit for acquiring marital assets and as funds for marital expenses. Id. The Third District disagreed with the trial court's conclusion that the portfolio account was a nonmarital asset and thus was not subject to equitable distribution. Id. The Third District found that the assets in the portfolio account and the margin account became subject to distribution through a two-step process of intermingling. Id. First, marital and nonmarital assets were intermingled within the two accounts, and thus the assets in each account "lost their separate character when they were intermingled with marital assets." Id. Second, the portfolio account was used as security for the margin account and "in effect, became co-mingled with the margin account."Id. The court found that "the portfolio account, via the margin account, became subject to distribution."Id. The Third District remanded for an award to the wife of "the same percentage distribution of the portfolio account as she received on the margin account." Id.
In this case, the Second District noted that the trial court had relied upon Adams to support the proposition that an individually titled security that is pledged as collateral for marital loans becomes a marital asset. Farrior, 712 So.2d at 1157. The Second District expressed its disagreement with Adams as interpreted by the trial court.Id. However, we read Adams to apply a narrow holding to the facts of that case rather than stating a general rule concerning nonmarital assets pledged as collateral. Here, it is undisputed that the stock in question was held in a safe deposit box rather than in a brokerage account, and the stock was never sold, intermingled with other assets, or titled other than in respondent's name. Thus, because of these distinguishing facts, the Second District's conclusion that the stock at issue in this case remained a nonmarital asset can be harmonized with the Third District's conclusion that the stock at issue inAdams became marital property after it was intermingled within a brokerage *Page 1179 
account, which was then pledged as collateral for another account.
In this court, petitioner contends that the Second District exceeded the scope of appellate review in that the court disturbed the trial court's factual findings as to marital assets without concluding that such factual findings were clearly erroneous. We do not agree. The Second District deferred to the trial court's factual findings but found, as a matter of law, that respondent's inherited assets were nonmarital assets under section 61.075(5)(b)2, Florida Statutes (1995), which provides that nonmarital assets include "[a]ssets acquired separately by either party by noninterspousal gift, bequest, devise, or descent, and assets acquired in exchange for such assets."Farrior, 712 So.2d at 1157. The Second District correctly relied upon this statutory provision in reaching the legal conclusion that "the status of the inherited stock did not change during the marriage and thus continued to be a nonmarital asset at the time of the dissolution." Id. Thus, we find no merit in petitioner's contention that the Farriors' use of the inherited stock as collateral caused the stock to become marital property. We find that petitioner's other arguments are outside the scope of the certified conflict.
Accordingly, we approve the decision of the Second District Court of Appeal in this case.
It is so ordered.
HARDING, C.J., and SHAW, LEWIS and QUINCE, JJ., concur.
PARIENTE, J., concurs with an opinion, in which LEWIS, J., concurs.
ANSTEAD, J., dissents with an opinion.