I respectfully dissent.
In my view the district court has essentially ruled, without saying so, that there is no evidence to support the trial court's factual finding that the stock titled in the wife's name was a marital asset. However, there was evidence to support the trial court's finding. The majority opinion simply ignores this evidence and, instead, focuses on only one of the numerous matters that the trial court ultimately considered as relevant in reaching its factual conclusion. The comprehensive analysis in the final judgment, after the receipt of extensive evidence, speaks for itself:
 j. Pursuant to Florida Statutes, Section 61.075(5)(b) and (7) (1995), the Court finds that the 10,298 shares of Coca-Cola Company, the 281 shares of Trust Company of Georgia, and the 429 shares of Genuine Parts stock, as set out in Paragraph (i), were initially nonmarital assets upon the Wife's receipt of said assets; both parties have acknowledged this fact. The issue before this Court is whether these assets have become marital assets during the course of the marriage.
 k. Equal access to nonmarital property by both spouses is a factor that courts can rely upon to support a finding that nonmarital property has become marital property. Walser v. Walser, 473 So.2d 306 (Fla. 2d DCA 1985); Crews v. Crews, 536 So.2d 353 (Fla. 2d DCA 1988). It is undisputed that throughout the parties' thirty-six year marriage, the Husband exercised complete control and management over all of the parties' property, including the stock titled solely in the Wife's name. The Husband controlled, managed, sold, traded, and *Page 1181 
voted the Wife's individually-titled stock. The Wife regularly executed blank stock powers to allow the Husband to exercise this control over this stock. The Wife also deferred to his judgment on any financial decisions related to this stock, as she did for virtually all of the parties' financial decisions. In essence, the Husband had equal access to the Wife's individually-titled stock. The Husband could draw on these assets, as a whole, for personal and family purposes, and in fact, did so often throughout the marriage. These factors support the Husband's claim that all of the parties' assets, including the Wife's individually-titled stock, have lost any separate identity through intermingling. See Amato v. Amato, 596 So.2d 1243 (Fla. 4th DCA 1992); Woodard v. Woodard, 634 So.2d 782 (Fla. 5th DCA 1994).
 l. One factor that can indicate an intermingling of nonmarital assets within a marriage is whether those assets are used in the marriage for providing luxuries and enriching the standard of living for both spouses and their family. Claughton v. Claughton, 483 So.2d 447 (Fla. 3d DCA 1986). The individually-titled stock was used by the parties to support a standard of living for the parties and their children that could not have been otherwise obtained by reliance on the parties' combined incomes alone.
 m. The use of nonmarital assets as collateral for marital debts constitutes intermingling sufficient to make the underlying collateral marital property. Adams v. Adams, 604 So.2d 494 (Fla. 3d DCA 1992). The Wife's individually-titled stock was often relied upon by the parties as collateral for numerous marital loans. Specifically, 220,372 shares of the existing 514,648 shares of Coca-Cola Company stock were either pledged as collateral for marital debts, or were obtained through the stock splits of shares previously pledged in this manner.
 n. In sum, the conduct of the parties throughout the marriage shows that the Wife's individually-titled stock has become completely intermingled with all of the parties' other assets. This intermingling has created a presumption that the Wife has made a gift to the Husband of an undivided one-half interest in her individually-titled stock.
 o. The Wife has asserted that she did not intend for her individually-titled stock to become marital property. However, only the fact that the inherited stock remained in the Wife's name can support this assertion. In view of the parties' actions throughout their thirty-six year marriage, the Court finds that the Wife intended for the individually-titled stock to be treated by both parties as a marital asset. She certainly intended for the Husband to manage and control her individually-titled stock, and to benefit from it.
 p. The Court rejects the Wife's contention that the Chestnut Street Exchange Fund is her nonmarital property. The Husband made the decision to obtain this asset in exchange for Coca-Cola stock, and the Wife deferred to his judgment. For this reason, the Chestnut Street Exchange Fund is a marital asset.
 q. The appreciation in value of the Wife's individually-titled stock was in great measure created passively by inflation, market conditions, or the general conduct of others. See Pagano v. Pagano, 665 So.2d 370 (Fla. 4th DCA 1996). Nonetheless, the appreciation in the individually-titled stock is attributable to the marital efforts of the parties, particularly through the Husband's management and oversight of the Wife's assets. Stevens v. Stevens, 651 So.2d 1306 (Fla. 1st DCA 1995); Heinrich v. Heinrich, 609 So.2d 94 (Fla. 3d DCA 1992). Because of these marital efforts, the appreciation on the Wife's individually-titled stock constitutes marital property subject to equitable distribution. *Page 1182 
 r. Based on the foregoing analysis, the Court finds that all of the parties' assets, whether titled jointly or individually, are marital assets subject to equitable distribution. Similarly, all of the parties' liabilities are marital liabilities. The Court rejects the Wife's contention that the stock inherited by her during the marriage, and titled in her name alone, should be awarded to her as her nonmarital property.
While I might agree that the fact that the stock was used as collateral, standing alone, may not justify a finding that the stock was marital property, that is not the scenario presented here. Indeed, perhaps the most telling of the trial court's findings is the finding that in "view of the parties' actions throughout their thirty-six year marriage, the Court finds that the wife intended for the individually-titled stock to be treated by both parties as a marital asset." Surely the majority is not holding that the pledging of individually-titled assets for a marital debt is not a relevant circumstance for the trial court to consider.
The holding of the majority appears to be that so long as stock is initially acquired as a separate asset and held in the name of one spouse, it can never become marital property no matter the intent of the parties or the way they treated the asset. This sounds a lot like pre-Canakaris law, law that typically favored paper titles usually held in the name of a dominating husband. See Canakaris v.Canakaris, 382 So.2d 1197 (Fla. 1980). Under our enlightened decision in Canakaris, such issues became largely issues of fact based upon the parties' real-life treatment of an asset in the marriage partnership. Isn't that the issue here?
I would reframe the issue presented and find error in the district court's failure to determine whether there was sufficient evidence to sustain the trial court's factual finding. Surely, we do not want to slip back to the pre-Canakaris days.
[EDITORS' NOTE: PAGES 1183-1206 CONTAINED DECISIONS WITHOUT PUBLISHED OPINIONS.] *Page 1207