933 So.2d 603 (2006)
William M. STOUGH, Appellant,
v.
Laurel L. STOUGH, Appellee.
No. 1D05-3658.
District Court of Appeal of Florida, First District.
June 27, 2006.
*604 John S. Mills and Tracy S. Carlin of Mills & Carlin, P.A., Jacksonville, for Appellant.
*605 Hal Castillo and William S. Graessle of William S. Graessle & Associates, P.A., Jacksonville, for Appellee.

ON MOTION FOR REHEARING
ERVIN, J.
Appellee, Laurel L. Stough, seeks rehearing of that portion of this court's opinion, filed April 21, 2006, in which we decided that the $95,000 advance from appellee's separate property used to purchase the parties' marital home, which was jointly titled in both their names, did not defeat the statutory presumption provided in section 61.075(5)(a)5, Florida Statutes, that the conveyance was intended as a gift to the former husband of one-half of jointly held property. As a result, we reversed the lower court's determination that the former wife was entitled to a special equity in the advance that she made. We deny the motion for rehearing, but withdraw our former opinion and substitute the following in its place for the purpose of explaining in greater detail our decision in such regard.
William M. Stough (former husband or husband) appeals from a final judgment of marital dissolution, claiming that the trial court erred (1) in declaring certain real property purchased in Alabama during the marriage and titled in both parties' names to be a non-marital asset of Laurel L. Stough (former wife or wife), (2) in awarding the former wife a special equity in the $30,000 down payment used to purchase the property, (3) in authorizing the former wife a special equity for advances made to purchase the marital home located in Florida and titled in the names of both parties, (4) in determining the amount of alimony allowed the former husband, (5) in denying the former husband an award of attorney's fees, (6) in failing to specify values with respect to the distribution of personal property, and (7) in ordering visitation below the guidelines established in the Fourth Judicial Circuit. We affirm as a proper exercise of the lower court's discretion the part of the final judgment directing visitation. We reverse the judgment as it relates to the issues pertaining to the equitable distribution of the two parcels of property and remand the case with directions. Because of our disposition of the property issues, we also remand the case to the trial court with directions to revisit the remaining undisposed issues for the purpose of considering all pertinent "factors necessary to do equity and justice between the parties." § 61.075(1)(j), Fla. Stat. (2001).
We first agree with appellant that the lower court erred in concluding that the real property situated in Alabama and held by both parties jointly was a non-marital asset. The basis for the court's determination was that the proceeds used to acquire the property were derived from the income of the wife's separate property, an irrevocable trust that had been established for the wife by her father during the marriage. In so deciding, the court apparently overlooked the fact that the wife had placed the income into a joint checking account from which practically all of the parties' living expenses were paid during the course of the 19-year marriage. The wife's monthly income from the trust was in excess of $8,000, while the former husband's sole source of income was from Social Security disability payments in the monthly amount of $569.[1]
Section 61.075(5)(a)1 designates as a marital asset an asset "acquired . . . during *606 the marriage, individually by either spouse or jointly by them." (Emphasis added.) Florida case law interprets the statute as placing the burden on the party claiming jointly held property is not a marital asset to present proof establishing such status by the preponderance of the evidence. See Knecht v. Knecht, 629 So.2d 883 (Fla. 3d DCA 1993). The former wife argues she satisfied her burden by offering evidence showing that nearly all, if not all, of the funds used to purchase the Alabama property were traceable to her separate trust income; therefore, she contends, it remained a non-marital asset, because property, even in joint names, can still be deemed non-marital if it can be traced to a non-marital source. As support for her argument, the wife relies upon Farrior v. Farrior, 736 So.2d 1177 (Fla.1999), in which the supreme court approved a decision of the Second District holding that stock inherited by one of the parties to a marriage remained the wife's separate property, despite the fact that the stock had been pledged as collateral for marital loans. The court's ruling was based upon evidence disclosing that the stock had been placed in a safe deposit box, rather than a brokerage account, and had never been sold or intermingled with other marital assets. Thus, the status of the stock as the wife's separate property had never changed during the marriage. Id. at 1178-79.
The motivating factor influencing the court's decision in Farrior appears to be that the property had maintained its separate identity throughout the parties' marriage, unlike the facts in Adams v. Adams, 604 So.2d 494 (Fla. 3d DCA 1992), which the supreme court in Farrior considered distinguishable. In Adams, stocks and bonds of the former husband had been placed in portfolio and margin accounts, and not only were the assets of the margin account used as security for the portfolio account, but they became intermingled with one another, as well as with marital assets, and were used as funds for the payment of marital expenses. Farrior, 736 So.2d at 1178.
The problem with appellee's argument at bar is that the funds used to purchase the Alabama property came from the same source used to pay nearly all of the family's expenses  the trust income, which had been placed by the wife in the parties' joint checking account during the marriage. In fact, the husband testified without contradiction that he expended funds far in excess of those that he had placed in the account from his own limited resources, such as the purchase of fishing boats. Such evidence is clearly consistent with the presumption of a marital gift made by the wife from her separate funds.
The analysis of the Fifth District in Archer v. Archer, 712 So.2d 1198 (Fla. 5th DCA 1998), provides further insight into the resolution of the question of whether a spouse's separate, non-marital property is entitled to retain such status by reason of the actions undertaken by the spouse during the course of the marriage. In Archer, the former wife had transferred her separate personal property, consisting of a money fund, certificates of deposit, mortgage securities and stocks, into a joint account. The parties used certain assets in the account for the purpose of purchasing items to satisfy their marital living expenses. The court noted that because the mortgage securities and the stock had remained intact since the wife brought them with her into the marriage, they remained traceable as the former wife's separate property. The court continued, however, that the remaining assets became untraceable due to their being commingled with marital assets and used for the purchase of marital items during the course of the marriage. Id. at 1200. The court *607 reached its conclusion by interpreting section 61.075 as creating a presumption of a gift to a spouse of one-half of jointly held property if the separate property of the other spouse is commingled with non-marital property, and it decided that because the wife had not rebutted the presumption in regard to the assets that were commingled, they became transformed into marital property. Id.
In the present case, the burden was on the wife to rebut the presumption that the funds used in the joint account to purchase the Alabama property were not a gift of one-half of the jointly held funds, which were commingled with those of the husband, and used to pay both the ordinary and extraordinary expenses of the marriage. She failed to meet her burden because she was unable to show that the trust income remained identifiable as her separate property and could be traced to a non-marital source.
For the same reasons, we conclude that the former wife is not entitled to a special equity in the $30,000 down payment used to acquire the property, because she failed to meet her burden of proof to show that she did not intend a marital gift by placing trust income into a joint account used to advance funds for the property's purchase. As further support for our conclusion, we note that the Alabama property was sold during the pendency of the divorce proceedings, and evidence was presented that each party obtained $105,000 from the proceeds of the sale, with the consent of both.
We reach the same conclusion as to both of the two advances the former wife used to purchase the marital home, which the parties acquired in 1994, during the marriage and which was held by them as tenants by the entireties. The trial court determined that the wife was entitled to a special equity by reason of two down payments for the purchase of the property in the amounts of $10,000, and $95,000, the latter amount financed from the trust established by the wife's father. The remaining balance of the purchase price was obtained through a conventional mortgage. Because the marital property was titled in the names of both parties as tenants by the entireties, a statutory presumption arose that such property was a marital asset, and the party making any claim to the contrary has the burden of proof. § 61.075(5)(a)5. Because it appears that the $10,000 advance was made solely from the parties' joint checking account, the wife has failed to sustain her claim to a special equity. See Zangari v. Cunningham, 839 So.2d 918 (Fla. 2d DCA 2003).
As for the $95,000 advance, although the record discloses that it was traceable to the wife's separate property, the irrevocable trust, because such sum was paid directly from the trust corpus by the trustee to the mortgage company for the purchase of the marital home, we agree that the wife nonetheless failed in her burden to overcome her statutory burden of showing that no gift to the couple was intended. See Knecht (former husband failed to establish special equity in $10,000 of $13,000 down payment given to him by his mother during the marriage for purchase of jointly held real property).
In her motion for rehearing, appellee argues that the case this court relied upon in deciding that she was not entitled to special equity in the $95,000 advance, Knecht, is factually dissimilar from that at bar because, although the Third District held the former husband was not entitled to a special equity in $10,000 given him by his mother to cover the payment of the parties' jointly-owned North Carolina property, there was no other evidence in Knecht that served to rebut the statutory presumption. Appellee points out that in *608 addition to the fact that the $95,000 down payment in the present case was never commingled with the parties' assets, other evidence was before the lower court from which it could conclude that no gift was intended, i.e., her testimony that she had placed her former husband's name on the deed solely for purposes of survivorship, so that, in the event anything should happen to her, their children would have a place to live. In our judgment, the wife's intention concerning why she permitted her husband's name to be placed on the deed with her own is insufficient evidence to overcome the statutory burden.
In its facts, this case is quite similar to those in Rutland v. Rutland, 652 So.2d 404 (Fla. 5th DCA 1995), receded from on other grounds, Anson v. Anson, 772 So.2d 52 (Fla. 5th DCA 2000), in which the Fifth District held the trial court erred in awarding the husband a special equity in the pre-marital down payment on the home the husband had purchased before the marriage, but which he transferred to the parties as tenants by the entireties following the marriage. In reversing, the court noted that the husband's conduct evincing joint ownership could not "be overcome by the mere unsubstantiated claim, raised for the first time during a dissolution proceeding, that he never intended a gift to the wife at the time of the conveyance." Id. at 406.
More recently, the Fifth District reconfirmed the Rutland holding in Cattaneo v. Cattaneo, 803 So.2d 889 (Fla. 5th DCA 2002), in reversing the trial court's decision that the base cost of the marital home was subject to the former husband's special equity as a result of his contributions from non-marital assets. In reversing, the court noted that the husband's evidence that no gift was intended, based upon his testimony that he had the property jointly titled to demonstrate to the Immigration and Naturalization Service that his marriage to the former wife, a resident of Trinidad, was not a fraud, was not sufficient evidence to overcome the statutory presumption that a gift was intended. We apply the same reasoning to the instant case. Appellee's explanation regarding why she allowed her husband's name on the deed is insufficient to overcome the burden imposed by section 61.075(5)(a)5. Contrast Hill v. Hill, 675 So.2d 168 (Fla. 5th DCA 1996) (former husband's evidence satisfied statutory burden because former wife corroborated husband's testimony that he had placed the home in the parties' joint names for estate-planning purposes).
Because of our disposition of the issues relating to the distribution of the real property, we do not reach the remaining issues raised by appellant pertaining to the amounts of alimony and attorney's fees awarded the husband. As in McMonagle v. McMonagle, 617 So.2d 373 (Fla. 5th DCA 1993), we remand the case to the trial court so that it may revisit the monetary awards in their totality. In so doing, we note that nothing in the equitable distribution statute requires an even split of marital assets between the parties. Section 61.075(1), while directing the trial court to "begin with the premise that the distribution should be equal," permits an unequal distribution if "there is a justification for an unequal distribution based on all relevant factors."[2]
AFFIRMED in part, REVERSED in part, and REMANDED.
PADOVANO and HAWKES, JJ., concur.
NOTES
[1] The husband was permanently, totally injured as a result of an automobile accident that occurred before the marriage, and, as described by the lower court, was "unemployable."
[2] In equitably distributing the parties' assets, the lower court should determine the value of all property to be distributed, both real and personal.