KAHN, J.
 

 Appellant, Linda Joyce Puskar, seeks review of a March 2009 final judgment of dissolution of marriage. She contends the trial court erred in failing to designate any portion of the couple’s Orange Park property as non-marital for purposes of equitable distribution. Appellant also alleges error in the court’s treatment of $63,000 in the equitable distribution plan. We affirm the latter finding, but reverse and remand as to the characterization of the subject real property.
 

 FACTUAL & PROCEDURAL BACKGROUND
 

 The Puskar union lasted nearly 13 years before the parties separated. In a dissolution petition, the husband asked for an equitable distribution of the parties’ marital assets. Of the parties’ four properties, Mr. Puskar claimed a special equity in the residence located at 1217 Bee Street North, in Orange Park. This parcel, described during at the final hearing simply as the “Bear Run” estate, was owned jointly by appellant and her father before the parties married. In her answer to the petition, appellant claimed that the Bear Run home was solely her premarital asset, thus entitling her to all proceeds from the sale of the property.
 

 
 *1203
 
 Much testimony addressed the Bear Run property. Appellant recalled that title to Bear Run passed to her after her father’s death. Appellee stated he moved into the Bear Run residence with appellant in the summer of 1993, ahead of their marriage in October of that year. Mrs. Puskar denied that the parties lived together at Bear Run before the marriage, but explained that appellee constructed an addition to the home around October or November 1992. Appellant testified she paid her future husband $8,000 for the construction labor.
 

 The parties also rented the property to third parties during the course of the marriage. Mr. Puskar claimed that Bear Run generated a net income of $42,513 during those years, as reflected in the couple’s joint tax returns. He stated that the parties used marital funds to cover the cost of debt, repairs, taxes, and miscellaneous expenses required to maintain the property. Citing another rental property in Crescent Beach, he asserted that the wife controlled the bank accounts into which the rental incomes were deposited. The wife confirmed that she alone controlled and administered rental incomes from the Bear Run and Crescent Beach properties, maintaining a separate account for each parcel. In September 2006, after appellee filed the petition for dissolution of marriage, Mrs. Puskar sold the Bear Run estate. Appellant testified she deposited the proceeds of sale ($124,000 after taxes and expenses) into a separate VyStar account on advice of counsel.
 

 The trial court entered a final judgment of dissolution of marriage on March 29, 2009. The order found that appellee moved into the Bear Run home around July 1993, and “made numerous repairs to the property over the years of the marriage.” Though recognizing that Bear Run was originally titled in appellant’s name, the order determined that $165,-000 — the full sale price of the property-should be credited on Mrs. Puskar’s side of the equitable distribution ledger and not set apart as non-marital. These sale proceeds were, the court reasoned, “co-mingled” with marital funds, because appellant deposited those funds “into ... accounts which also contained marital sums.” The trial court accordingly classified the proceeds as marital.
 

 ANALYSIS
 

 We review de novo identification of an asset as marital or non-marital.
 
 See Farrior v. Farrior,
 
 736 So.2d 1177, 1179 (Fla.1999). Where mixed questions of law and fact arise, we defer to the trial court’s factual findings to the extent they are supported by competent, substantial evidence, but review legal conclusions de novo.
 
 Batur v. Signature Props. of Nw. Fla., Inc.,
 
 903 So.2d 985, 995 (Fla. 1st DCA 2005). Pursuant to section 61.075(5)(b), Florida Statutes (2006), non-marital assets include those acquired by either party prior to the marriage. For present purposes, the cut-off date for determining the marital status of assets is the date of filing the petition for dissolution.
 
 See
 
 § 61.075(6), Fla. Stat. (2006).
 

 In making our analysis, we consider the various factors of record in this matter relevant to the classification of the subject property. Mr. Puskar does not dispute that his wife owned Bear Run before the marriage. Mrs. Puskar points out that filing a joint federal income tax return including the separate non-marital income of one spouse does not convert that income to marital property under section 61.075(5)(b)3., Florida Statutes (2005) (defining as a non-marital asset “income derived from nonmarital assets during the marriage,” unless treated or relied upon as a marital asset). “To rule otherwise would
 
 *1204
 
 force married persons to file separate income tax returns, and to pay higher income taxes, simply to protect the non-marital status of their separate property.”
 
 See Holden v. Holden,
 
 667 So.2d 867, 869 (Fla. 1st DCA 1996).
 

 As Mr. Puskar has admitted, appellant deposited the rental income checks into her own personal bank accounts, over which she exercised exclusive control. We also know, of course, that even joint use, by husband and wife, of income from non-marital property, does not entirely transform the property itself into a marital asset.
 
 See Farrior v. Farrior,
 
 712 So.2d 1154, 1156 (Fla. 2d DCA 1998) (observing that an asset may retain its separate identity even after the income derived from that asset is used to maintain or raise the marital standard of living),
 
 approved,
 
 736 So.2d 1177 (Fla.1999).
 

 Here, the trial court largely relied upon the alleged disposition of the sale proceeds from Bear Run as justification for classifying the property as marital. The court concluded appellant commingled the proceeds with marital funds when she deposited those proceeds “into ... accounts which also contained marital sums.” At best, the record strains to support this finding. Mrs. Puskar testified she deposited the proceeds of sale — approximately $130,000 after costs and taxes — into a “new” VyStar account at the recommendation of her attorney. Appellee offered no evidence to contradict this testimony and, when asked on direct examination whether his wife had “all of that $165,000,” appellee stated, “To the best of my knowledge.” We are, respectfully, unable to identify what the trial court focused upon for its findings that appellant deposited the proceeds of sale “into ... accounts which also contained marital sums.” Competent, substantial evidence lacks in this regard.
 

 We have also considered the parties’ joint references to repair work appel-lee performed on the Bear Run parcel. “The expenditure of marital funds on a non-marital asset does not transform the entire asset into a marital one; rather, it is the enhancement in value that becomes marital.”
 
 Wilson v. Wilson,
 
 992 So.2d 395, 397-98 (Fla. 1st DCA 2008). Moreover, Florida law is clear that “to make an award for the enhancement in value and appreciation of a nonmarital asset, the court must make specific findings as to the value of such enhancement and appreciation during the marriage, as well as which portion of that enhanced value is attributable to marital funds and labor.”
 
 Martin v. Martin,
 
 923 So.2d 1236, 1238-39 (Fla. 1st DCA 2006). Mr. Puskar did testify he “did a lot of repair work” on the home, but the trial court made no observation that the volume of work, plus expenditures, would have wiped out entirely the non-marital portion of the property.
 

 We REVERSE the finding on the marital nature of Bear Run and REMAND. The trial court should determine what, if any, portion of that property may be properly characterized as marital. We find competent, substantial evidence to support the finding as to the balance of appellant’s credit union account. As a result, that finding is AFFIRMED.
 

 LEWIS and WETHERELL, JJ., Concur.