652 So.2d 404 (1995)
Betsy T. RUTLAND, Appellant,
v.
Joseph P. RUTLAND, Jr., Appellee.
No. 94-436.
District Court of Appeal of Florida, Fifth District.
February 17, 1995.
Rehearing Denied April 4, 1995.
*405 Marcia K. Lippincott of Marcia K. Lippincott, P.A., Orlando, for appellant.
Charles W. Willits, Orlando, for appellee.
HARRIS, Chief Judge.
Joseph P. Rutland, Jr. filed the petition herein to dissolve his marriage to Betsy T. Rutland. At the time of this marriage, Mr. Rutland and his brother owned Rutland's, Inc., a retail clothing store that had been in the family for many years. During the marriage, Mr. Rutland had the corporation redeem his brother's stock, thereby becoming the sole stockholder of the business.
During the marriage, the parties lived in a home that Mr. Rutland purchased prior to the marriage, but which he transferred to the parties as tenants by the entireties after the marriage. Substantial improvements were subsequently made to the home financed, in part, by a mortgage and note both parties endorsed.
In its Judgment of Dissolution, the trial court denied Mrs. Rutland alimony, held that Mr. Rutland's entire interest in Rutland's, Inc. was non-marital and awarded Mr. Rutland a special equity in the home based on his original down payment made in purchasing the home. Mrs. Rutland appeals; we affirm in part and reverse in part.
We affirm the denial of alimony. In its Judgment of Dissolution, the trial court properly considered the factors enumerated in section 61.08(2), including the "relatively short duration of the marriage," the marital and non-marital assets of each party, the fact that the marriage was childless and that the wife entered the marriage with virtually no assets, the fact that the wife had a bachelor's degree from a highly acclaimed college and was self-supporting before the marriage, the fact that she still has skills that make her employable at present, the fact that the wife is relatively young and in good health, and the fact that the wife was awarded $164,897.95 in the distribution of marital assets and had a non-marital trust fund in the amount of $35,000.
We find that under the restraints of Canakaris we cannot substitute our views for those of the trial judge, who denied alimony. However, we disagree with the court's conclusion that the acquisition by Mr. Rutland of his brother's half-interest in Rutland's, Inc.  even if accomplished through the corporate redemption of stock  was a non-marital asset. Now, instead of owning fifty percent of the outstanding stock of Rutland's, Inc., Mr. Rutland owns one hundred percent of such stock and therefore is entitled to one hundred percent of all profits and can set his salary as he sees fit. We find no difference in this acquisition than had Mr. Rutland, during the marriage, purchased fifty percent interest in a competing corporation even if he paid for it out of his wholly owned corporation. While we agree that the record does not support a claim that there was an appreciation in value of Mr. Rutland's prior ownership which would constitute a marital asset (the record is clear that the corporation is worth less now than at the time of marriage), nevertheless, his newly acquired interest, purchased during the marriage, is subject to distribution as a marital asset. It does not matter that this one-half interest is worth less than it was worth at the time of the parties' marriage. Because it was purchased during the marriage with funds realized through the husband's corporation which in turn depends on the husband's work or active management for its funds, it is a marital *406 asset. Because the court deferred a formal evaluation of the retail business, upon remand the court should determine the value of this marital asset and the appropriate percentage to be awarded to the wife.
We also find the court erred in awarding the husband a special equity in the home based on "his premarital down payment." The supreme court in Robertson v. Robertson, 593 So.2d 491 (Fla. 1991), held that the enactment of section 61.075, Florida Statutes (1989), preempted Ball v. Ball, 335 So.2d 5 (Fla. 1976), and returned us to the pre-Ball law relating to the presumption of gift raised by a conveyance of one spouse's interest to both spouses as tenants by the entireties. Although Robertson does not hold that the husband's self-serving claim that no gift was intended, if believed by the trial judge, is insufficient to rebut the presumption,[1] the pre-Ball case of Kollar v. Kollar, 155 Fla. 705, 21 So.2d 356 (1945), does answer this question and is controlling. In reversing a trial court finding that no gift was intended, the Kollar court held:
We are of opinion that the husband has failed to meet the burden. It is true, as found by the learned chancellor, that the original purchase of the property was made with funds of the husband, and that he has furnished the home and maintained it at his sole expense. The husband has also denied that at the time of the transaction he intended a gift of a property interest to his wife. But we cannot overlook the fact in the record there appears the sworn statements of the husband, made not once but several times, that when he purchased the property he advised his wife that he had placed it in both names; that he "figured on giving half"; that he wanted her to have it if he died so that she would have a source of income to maintain herself and the children. Such statements, made at the closing of the transaction and at a time when the parties were living together in some semblance of peace and harmony, are entirely compatible with the theory that the husband intended the creation of a joint interest in the property during the lives of the parties, with right of survivorship in the wife in the event he predeceased her. In the face of such sworn admissions it cannot be fairly said that the husband has overcome the presumption of a gift to the wife.
Id. at 358.
In our case, the husband deeded all of his "right, title, interest, claim and demand" in the property to himself and his wife as tenants by the entireties without reserving his known claim  his premarital down payment. He made the wife aware of the conveyance, apparently without advising her of his now claimed reservation of an equitable interest. He held her out to others as a co-owner of the property when he permitted her to join with him in the joint execution of a note and mortgage for the financing of subsequent improvements. And he testified, as did the husband in Kollar, that he wanted the wife to have the home if he predeceased her.
The husband's conduct evidencing joint ownership simply cannot be overcome by the mere unsubstantiated claim, raised for the first time during a dissolution proceeding, that he never intended a gift to the wife at the time of the conveyance. See Laws v. Laws, 364 So.2d 798 (Fla. 4th DCA 1978); Claughton v. Claughton, 483 So.2d 447 (Fla. 3d DCA), rev. denied, 492 So.2d 1330 (Fla. 1986).
AFFIRMED in part; REVERSED in part and REMANDED for further action consistent with this opinion.
THOMPSON, J., concurs.
GRIFFIN, J., concurs in part; dissents in part, with opinion.
GRIFFIN, Judge, concurring in part; dissenting in part.
I concur in the majority opinion except for the affirmance of the denial of any rehabilitative or permanent alimony.
Husband and wife in this case were married on April 14, 1984. Prior to the marriage, *407 in 1974, wife obtained a Bachelor of Science degree in Art Education from Skidmore College in New York. She worked for six months as an art teacher at a Montessori School in Jacksonville but was laid off. She then worked for an advertising agency for six months. In 1976, wife was employed for one year by the Jacksonville Children's Museum, providing art programs for children. Between 1977 and 1980 she did special sewing projects for designers. In 1980, wife was hired by the Colonial Plaza Mall as Promotions Director at a salary of $24,000. While working in this job, she met husband, who owned Rutland's clothing store in the mall. Once married, she left her job because her employer concluded it was inappropriate for her to represent the mall while married to a tenant.
Husband wanted wife to be at home, available for his children. During the marriage, she actively cared for husband's children and worked part-time for Rutland's. She received a salary of $7-$8/hour but received no commissions. In 1991, husband asked the wife to take charge of the ladies' department of Rutland's. She agreed to do so but no longer received a salary.
On July 7, 1992, husband had back surgery and was disabled for approximately six months. Wife apparently cared for husband during this time. They also closed the Colonial Plaza store and reopened a new store, on November 1, 1992, at the Fashion Square Mall. On November 6, 1992, husband moved out of the house, fired wife from her job and filed for divorce.
Wife, at forty-one years of age, ultimately found a job working in sales at Dillards department store and receives $10/hour plus commission for sales exceeding $250/hour. She estimated her gross monthly income from her employment at $1,145. She claims monthly expenses of $4,408.37. During the years of the marriage, husband's net income ranged between approximately $104,000 to $247,000, with an average net income over the nine years of approximately $135,000.
In denying alimony, the lower court did make findings on the issues noted by the majority. The court made no findings concerning several other of the statutory factors, however, including: the standard of living established during the marriage, the emotional condition of the parties, the liabilities distributed to each, the income of either party, the contribution of either party to the marriage (including homemaking, child care, education, and career building of the other party), or wife's contribution to husband's business. This court has previously committed itself to requiring specific findings of fact on all of the factors, not just the ones that support the court's alimony decision. Kennedy v. Kennedy, 622 So.2d 1033 (Fla. 5th DCA 1993). Although the majority is probably correct that the lower court's denial of any alimony to the wife will not reach the almost impossibly high reversal threshold of Canakaris, the point of the fact finding requirement is for this court to be sure that all the various factors have been considered and determined by the trial court. This is especially important in a case such as this where the trial court makes a decision to award no alimony. I would remand on this issue for proper fact finding. Upon consideration of all the relevant factors, the court might revisit the no alimony decision.
NOTES
[1] Robertson merely upheld the trial judge that found "the greater weight of the evidence supports the finding of an intended and completed gift... ." Robertson does not indicate what it would have done had the trial court accepted the husband's testimony.