675 So.2d 168 (1996)
Gregory A. HILL, Appellant,
v.
Mary Lou HILL, Appellee.
No. 95-545.
District Court of Appeal of Florida, Fifth District.
May 10, 1996.
Rehearing Denied June 18, 1996.
James E. Taylor, Jr., Orlando, for Appellant.
Michael Fender, Maitland, for Appellee.
GOSHORN, Judge.
Gregory Hill appeals the final judgment of dissolution of marriage. We find no merit in the husband's contention that the trial court erred by holding that the loans to him from his mother did not constitute a marital liability. We agree, however, that it was error to find that the house the parties inhabited was a marital asset and reverse on that point.

THE FACTS
The parties were married over 18 years and had no children. The house they lived in had been owned, debt-free, by the husband for five years prior to the parties' 1976 marriage. In 1979, the husband transferred title to himself and the wife as tenants by the entireties. The wife testified to the reason the husband deeded the property over:
We were going on a cruise or flying to Hawaii, I don't know which one it was, but we hadI had talked about a will. And he had told me if something happened to him, that he did not want his mother or sister to get the farm. And he had told me that if something happened to both of us, then the kids would inherit the farm. That's the way he wanted it.
Even on cross examination, the wife testified that the reason the house was deeded in both names was so that she would get the property in the event the husband died or so the *169 children would get it if both she and the husband died.
The husband also testified to his reason for changing the title on the house:
Q. And the purpose of this deed, according to yourself, is for what? Why did you deed the property to your wife?
A. Purposes of survivorship if something should happen to me.
* * *
That was what she wanted. She had wanted her name on the property from the time we got married, and I finally went ahead and did it.... I had no wish that it would go to my mother and sister, as long as [the wife] was in the picture.
He testified that he never intended the house to be a gift to the wife. The trial court found that the house was a marital asset and that the husband had failed to meet his burden of establishing a special equity therein.

THE LAW
Subparagraph 61.075(5)(a)5., Florida Statutes (1995) provides:
All real property held by the parties as tenants by the entireties, whether acquired prior to or during the marriage, shall be presumed to be a marital asset. If, in any case, a party makes a claim to the contrary, the burden of proof shall be on the party asserting the claim for a special equity.
The husband argues that he met his burden of establishing that transfer of the title to the house was not intended as a gift, but rather was done for the purposes of survivorship in the event of his death.[1] As he asserts, both parties testified that the purpose of the joint names was to provide for the passing of title upon the husband's death. There was no proof offered to the contrary.
The wife does not deny her testimony or attempt to expound upon it, but rather contends that this case is controlled by the holding in Rutland v. Rutland, 652 So.2d 404 (Fla. 5th DCA 1995). Prior to the Rutlands' marriage, Mr. Rutland had purchased the house the parties lived in. He transferred the title to himself and his wife as tenants by the entireties after the marriage. This court held that the trial court erred by finding that the husband had a special equity in the home based upon the husband's premarital down payment, quoting from Kollar v. Kollar, 155 Fla. 705, 21 So.2d 356, 358 (1945):
The husband has also denied that at the time of the transaction he intended a gift of a property interest to his wife. But we cannot overlook the fact in the record there appears the sworn statements of the husband, made not once but several times, that when he purchased the property he advised his wife that he had placed it in both names; that he "figured on giving half"; that he wanted her to have it if he died so that she would have a source of income to maintain herself and the children. Such statements, made at the closing of the transaction and at a time when the parties were living together in some semblance of peace and harmony, are entirely compatible with the theory that the husband intended the creation of a joint interest in the property during the lives of the parties, with right of survivorship in the wife in the event he predeceased her. In the face of such sworn admissions it cannot be fairly said that the husband has overcome the presumption of a gift to the wife.
Id. at 406. This court compared Kollar to its own case:
In our case, the husband deeded all of his "right, title, interest, claim and demand" in the property to himself and his wife as tenants by the entireties without reserving his known claimhis premarital down payment. He made the wife aware of the *170 conveyance, apparently without advising her of his now claimed reservation of an equitable interest. He held her out to others as a co-owner of the property when he permitted her to join with him in the joint execution of a note and mortgage for the financing of subsequent improvements. And he testified, as did the husband in Kollar, that he wanted the wife to have the home if he predeceased her.
The husband's conduct evidencing joint ownership simply cannot be overcome by the mere unsubstantiated claim, raised for the first time during a dissolution proceeding, that he never intended a gift to the wife at the time of the conveyance.
Id. (citations omitted).
The distinguishing factor in the instant case not present in Rutland is that here, there was more than the husband's self-serving statements that the property was placed in both names for survivorship purposes only. The wife also testified that the conveyance was done for survivorship purposes. While the husband's statements alone would not have been sufficient to overcome the gift presumption, Kollar; Claughton v. Claughton, 483 So.2d 447 (Fla. 3d DCA), review denied, 492 So.2d 1330 (Fla.1986), the wife's agreement satisfies the husband's burden of proof required by subparagraph 61.075(5)(a)5. In the absence of a written, contemporaneous agreement that the deed was executed for survivorship purposes only, the husband could produce no better evidence than the testimony of the wife supporting his no-gift claim. Accordingly, the trial court erred in concluding that the husband had not carried his burden. The husband unequivocally established his special equity.[2]
REVERSED and REMANDED with instructions to enter an amended final judgment in accordance with this opinion.
THOMPSON, J., concurs.
GRIFFIN, J., dissents, without opinion.
NOTES
[1] See Ball v. Ball, 335 So.2d 5 (Fla.1976), where the court held:

[A] special equity is created by an unrebutted showing ... that all of the consideration for property held as tenants by the entireties was supplied by one spouse from a source clearly unconnected with the marital relationship. In these cases, the property should be awarded to that spouse, as if the tenancy were created solely for survivorship purposes during coverture, in the absence of contradictory evidence that a gift was intended.
Id. at 7 (footnote omitted). This presumption has since been reversed, and the burden of proof is now on the transferring spouse to prove no gift was intended. See Robertson v. Robertson, 593 So.2d 491 (Fla.1991).
[2] We note that although subparagraph 61.075(5)(a)5. uses the term "special equity," the statute actually provides a procedure to determine whether the disputed property is a marital asset.