772 So.2d 52 (2000)
Joseph B. ANSON, Appellant/Cross-Appellee,
v.
Susan Marie ANSON, Appellee/Cross-Appellant.
No. 5D99-204.
District Court of Appeal of Florida, Fifth District.
October 6, 2000.
*53 Robert W. Thielhelm, Jr., John W. Foster, Sr., and Eric S. Golden, of Baker & Hostetler, LLP, Orlando, for Appellant/Cross-Appellee, Joseph B. Anson.
Martin L. Haines, III, of Martin L. Haines, III, Chartered, of North Palm Beach, for Appellee/Cross-Appellant.
EN BANC
PER CURIAM.
Joseph B. Anson (husband), appeals his final judgment of dissolution of marriage and Susan M. Anson (wife) cross-appeals.
The parties were married in 1989 and had a six year old child when the petition for dissolution was filed in 1996. The husband had assets of considerable value when he entered the marriage and the wife had little. The primary focus on appeal is the trial court's treatment of the husband's pre-marital assets. Specifically, the husband contends that no portion of the capital stock owned by him that was issued by Anson-Stoner, Inc. (Anson-Stoner), should be regarded as a marital asset. Additionally he contends that two investment accounts known as the "Consults Accounts," largely funded with dividends from Anson-Stoner and established for the benefit of his sons from a prior marriage, should not be regarded as marital property.
The wife, who was awarded an interest in the Consults Accounts, requests clarification of the party entitled to appreciation in that account between the time of final judgment and the disposition of this appeal. Both parties raise additional issues which we affirm without discussion.

I. Anson-Stoner Capital Stock

The husband and Michael Stoner formed Anson-Stoner, Inc. in 1970. The husband received 60% of the capital stock and Stoner received the remaining 40%. Both founders actively worked for the corporation. A third-person acquired 5% of the stock in 1992 after which Stoner owned 37.5% of the outstanding stock and the husband's interest was reduced to 57.5%. Stoner's stock was redeemed by the corporation with corporate funds on December 31, 1994, pursuant to a buy/sell agreement entered into in the early 1980's between the corporation and Stoner.
Influenced by the decision in Rutland v. Rutland, 652 So.2d 404 (Fla. 5th DCA 1995), the wife urged and the trial court found that although the redemption was funded by the corporation, the redemption was deemed a "purchase" by the husband during the marriage with marital funds and was a marital asset because the redemption increased the husband's proportionate *54 interest in the outstanding stock of Anson-Stoner.

A. Rutland v. Rutland

In Rutland, the husband and his brother were equal stockholders of a corporation that engaged in the retail sales of clothing. The business was a family business of long standing and the husband's stock had been acquired prior to the marriage. The corporation redeemed the brother's stock during the marriage and the husband became the sole shareholder. We learn the additional fact from today's dissent that the corporation obtained a loan in order to provide funds to redeem the brother's stock. Rutland reasoned that because the redemption took place during the existence of the marriage and because the brother's stock was redeemed with funds of a corporation that realizes profits from the husband's active management and work, the corporate entity should be ignored and the redemption treated as though the purchase was made directly by the husband. Rutland also reasoned that the redemption was no different from a transaction in which the husband would purchase a 50% interest in a competing corporation even if he paid for it out of his wholly owned corporation. The court ruled that the husband owned 50% of the stock as non-marital property and the remaining 50% as marital.
We recede from the decision in Rutland for the following reasons:
1. The opinion failed to recognize that the brother in Rutland owned a 50% interest in the corporation and relinquished it in exchange for funds flowing from the corporation to himself. The surviving shareholder, the husband, was not affected by the redemption unless a discount or a premium was paid to the brother. Assuming that book value was paid to the brother, the value of the husband's stock was the same before and after the redemption. Fifty percent ownership of a corporation is theoretically the same as 100% of that same corporation after the other 50% shareholder has had his interest redeemed. If the redemption had been accomplished by the liquidation of 50% of the corporate assets, the husband's remaining interest of 100% would have the same value as before the redemption. This result would not be changed by the corporation having obtained a loan to finance the redemption rather than liquidating corporate assets. In fact, the corporation would be better off since its operating assets would not have been impaired by a liquidation of one-half of them.
2. The example used in Rutland to wit: "We find no difference in this acquisition than had Mr. Rutland, during the marriage, purchased fifty per cent in a competing corporation even if he paid for it out of his wholly owned corporation," is confusing. If Mr. Rutland had used, replaced, or diminished in value, a non-marital asset to acquire another asset, the acquired asset would also be a non-marital asset.
3. A stockholder's interest in a corporation is limited to the legal rights flowing from the ownership of capital stock. Those rights do not include a pro-rata interest in corporate assets. The corporation, as a legally recognized entity, holds title to its assets.
4. The earnings of a corporation do not become a marital asset upon marriage. Assets acquired through corporate earnings are corporate assets until payments are made for services or as dividends.
5. If a shareholder-spouse devotes work efforts to a corporation during marriage, the corporation's income is not immediately converted into marital income. If the corporation retains assets acquired from earnings of a corporation rather than distributing them as dividends to *55 shareholders, the value of the outstanding capital stock should appreciate in value. Section 61.075(5)(a)2, Florida Statutes, provides that the appreciation of a non-marital asset during marriage is to be classified as a marital asset if the appreciation resulted from marital efforts. In the absence of extra-ordinary circumstances, the statutory scheme for determining whether non-marital corporate stock is available for equitable distribution is based upon a comparison of values at the time of marriage and at the time of dissolution without enlisting the extreme measure of ignoring the corporate entity.

B. Valuation Approach

The correct approach in determining whether any portion of the husband's stock issued by Anson-Stoner is marital is to determine the value at the time of marriage and again at the time of dissolution. This approach conforms to the statutory concept of appreciation of non-marital assets as described in section 61.075(5)(a)2, Florida Statutes. A comparison of the two values would reveal whether the stock appreciated. If appreciation took place, an analysis of the reasons for appreciation must be undertaken to determine whether to classify all or a portion of the appreciation as marital. Simply because a shareholder-spouse devotes work efforts to a corporation during marriage should not transform the entire appreciation of the stock into a marital asset. Analysis is required to determine whether appreciation occurred because of corporate attributes, such as, goodwill, underlying investments, customer supplier and employee bases, operating assets, and inventory. Allocation of the appreciation should be no more difficult in marital law than is the allocation of fault in a negligence action in tort law.
In the instant case, the record reveals that a remand for that analysis is unnecessary. The stock value declined during marriage with the decline partially attributable to dividends enjoyed by the parties during marriage and to the loss of a valued customer. Therefore, no portion of the Anson-Stoner stock should be regarded as a martial asset.

II. The Consults Account

Both of the parties adopted the use of an analysis of the retained earnings bookkeeping account of Anson-Stoner in order to determine whether dividends to fund two investment accounts called the "Consults Accounts" were marital or non-marital. We do not approve or endorse such an approach; but, since both parties used it and convinced the trial court to use it in fashioning a distribution, we will not disturb it.
We also are inclined to affirm the conclusion that the account is a marital asset because both marital and non-marital funds were used to establish the account.

III. Conclusion

We reverse the finding of the trial court that any portion of the Anson-Stoner stock constitutes a marital asset as a result of the redemption of the stock of a third-party shareholder. Because that stock was an important element when the trial court fashioned the plan of equitable distribution, we must vacate the plan and remand for further consideration. A plan must be adopted that preserves the Anson-Stoner stock as a non-marital asset.
THOMPSON, C.J., COBB, SAWAYA and PLEUS, JJ., concur.
PETERSON, J., concurs and concurs specially with opinion.
GRIFFIN, J., concurring in result specially with opinion.
HARRIS, J., concurring in part, dissenting in part with opinion.
*56 PETERSON, J., concurs and concurs specially with opinion.
I enthusiastically applaud the majority's decision to recede from Rutland. My comments are directed towards the issue of using retained earnings of a corporation to determine the marital or non-marital nature of distributions from the corporation, an approach that I consider incorrect.
Two of the assets that created much difficulty before the trial court and on appeal are the "Consults Accounts." These are two accounts held by a stockbroker and managed by an independent financial manager. The accounts were funded during the marriage by a dividend from Anson-Stoner of several hundred thousand dollars and grew in value to $962,000 by the time of the dissolution. The accounts were established by the husband for his two sons of a prior marriage, but apparently he retained non-fiduciary control over the accounts.
The parties concluded that it was important to classify the dividends used to fund the Consults Accounts as either marital or non-marital income; that classification would also carry over to the balances in the Consults Accounts and determine the manner of distribution. In order to accomplish the classification of dividends, both of the parties engaged in an analysis of the retained earnings account of Anson-Stoner. The husband argued that the dividend that was used to establish the Consults Accounts was from income posted to the retained earnings account before marriage and the wife argued that the dividend was from income earned by the corporation during the marriage. Accountants were called as expert witnesses by each of the parties to classify the dividends. One employed the use of a first in, first out (FIFO) inventory method to classify the Anson-Stoner dividends while the other accountant determined a last in, first-out (LIFO) method was appropriate. The trial court ruled that an analysis of the retained earnings account using either LIFO or FIFO resulted in classifying the Consults Accounts as marital property. By employing the retained earnings account to determine the source of income, the parties and the trial court seemed comfortable in assuming that a stockholder of a corporation has a vested interest in a corporate general ledger bookkeeping account that has no value.
I agree that we should affirm the finding that the Consults Accounts was marital property, but only because the approach used to reach that conclusion was employed by both parties. However creative that approach may be, I cannot subscribe to it. A stockholder has no interest in any corporate bookkeeping account. The sole interest that a stockholder has in a corporation is represented by corporate stock. The certificate of stock entitles the shareholder to certain rights, none of which includes a direct interest in any corporate holdings or a corporate bookkeeping account. See Fla. Stat., ch. 617 (1997).
I believe that the parties approach is incorrect for the following reasons.
1. The retained earnings account of a corporation is a bookkeeping account maintained to keep a historical record of net income, net losses, dividend distributions, and other matters affecting the equity of a corporation. It is not a cash or asset account, nor does it reflect any amounts of cash or funds available for distribution to stockholders. In fact, a corporation could have a balance in a retained earnings account, yet have no cash to pay any dividends.
2. A balance in a retained earnings account does not mean that dividends must be paid to stockholders. In order to conduct a business, a corporation most always maintain working capital, purchase fixed assets, maintain accounts receivable, and maintain inventory among other things, all of which, reduces cash available for dividends. The extent to which *57 these requirements must be maintained fluctuates from year to year.
3. A corporation is a recognized separate legal entity capable of owning its own assets and managing its own business. A stockholder has certain rights in a corporation, but those rights do not include a direct interest in any corporate asset or income nor do these rights include an interest in a corporate bookkeeping account.
4. Analyzing a corporate retained earnings account to determine marital earnings ignores the corporate entity. Neither a stockholder nor the stockholder's marital partner has any direct interest in the account and cannot require the corporation to make any distributions simply because an entry was made in the account during the term of the marriage.
5. The balance shown in a retained earnings account is not a direct indication of the value of a corporation. An analysis of the entire business structure of the corporation is required in order to determine the market value of its stock. This is most apparent when one considers the values of publicly traded corporations that have no income.
6. Losses are also posted to the retained earnings account. Under the theory adopted by the parties and the court, how does one treat a net loss?
7. How does one treat distributions of cash dividends to a married stockholder when the retained earnings account had a balance both before and after marriage? Neither of the expert witness accountants in the instant case were able to agree on how the distributions were to be classified. Not surprisingly, each one took the position favorable to their clients because no rules exist to guide them.
8. It was argued below that because Anson-Stoner was an "S" corporation under the U.S. Internal Revenue Code, stockholders had some vested right to corporate income for each accounting period. "S" corporation status does nothing more than regulate the manner in which corporate income is taxed and determines the basis of the stock in the hands of the shareholder for purposes of calculating capital gains or losses upon its disposition. Florida corporate law is not affected by the election of "S" corporation status under the Internal Revenue Code.
9. Analysis of a company's retained earnings account to determine whether stock held in that company by a husband or wife is a marital or non-marital asset is not consistent with the criteria for determining the same as set forth in section 61.075(5)(a)2.
The question presented by the instant appeal is: How may an asset, existing at the time of dissolution of marriage, be determined to be marital or non-marital where the asset was purchased from funds received in the form of dividends from a corporation (in which a shareholder-spouse had a pre-marital interest and continued to devote time and effort toward during the marriage)? I regret to say that I have struggled with the problem without arriving at a bright line rule. So far, I can only offer the suggestion that each situation must be examined on a case by case basis to include: appraisals of the corporate stock at the time of marriage and at the time of dissolution, review of corporate distributions, determining the use of corporate distributions during marriage, and determining the extent of the shareholder-spouse's involvement with corporate business and the contribution that involvement made to corporate business.
My approach in the instant case would have been to compare the value of the corporate stock at the time of marriage *58 and at the time of dissolution. I would then consider the amount of dividends paid and the amount of those distributions the shareholder-spouse has claimed and maintained as separate property.
Under this approach, I would first observe that the value of the stock was much greater at the time of marriage than at the time of dissolution. Part of the reason for the decline was the payment by the corporation of substantial cash dividends during the marriage in addition to the amounts devoted to establishing the Consults Accounts. Presumably, those dividends were enjoyed by both of the marital partners during happier times. Those dividends depleted the corporate cash and necessarily reduced the value of the corporate stock of this small service corporation. In analyzing the flow of cash through dividends and trying to ascertain the extent to which the segregated Consults Account was derived if at all through marital income, I would then add the total amount of corporate dividends used to establish the Consults Accounts to the value of the corporate stock at the time of dissolution and compare it with the value at the time of marriage. That comparison shows that the value of the stock at the inception of the marriage exceeds the total value at the time of dissolution plus the dividend used to establish the Consults Account. This decline in value in excess of the amount used to fund the Consults Account convinces me that the shareholder-spouse's separate property should not be charged with the loss and that the Consults Accounts should not be classified as marital property.
The non-shareholder spouse in the instant case was not willing to consider the stock's loss of value that occurred during marriage arguing that section 61.075(5)(a)2, is only directed toward consideration of appreciation of separate property during marriage, not reduction in value. While I might agree that the non-shareholder spouse should not have to compensate the shareholder spouse for loss of value during marriage with marital assets, I believe it is grossly unfair to allow the non-shareholder spouse to enjoy the corporate distributions during marriage that at least partially led to reduction in value of the corporate stock and then ignore that reduction in value when the Consults Accounts are to be distributed at the time of dissolution.
My last concern involves the concept that once a marital partner devotes any effort to an asset constituting separate property, the entire appreciation during marriage constitutes a marital asset. This concept is particularly disturbing in the context of the capital stock involved in the instant case. The concept freezes the value of the capital stock at the time of marriage and does not allow the non-marital value to appreciate at all.
Most successful corporations, the stock of which has been owned by one of the marital partners prior to marriage and which perhaps has been in business for some years such as the retail clothing store in Rutland, realize profits from influences other than a marital partner that works for or even manages the corporation. Goodwill that was built during premarital years, customer supplier lists, operating and plant assets, employees, inventory, and working capital all contribute to the business success. Yet from the day of marriage, any appreciation of the stock in the hands of the shareholder-spouse is said to be a marital asset although any depreciation for whatever reason is of no concern. Rutland, 652 So.2d 404, 405.
I believe that consideration should be given to the allocation of appreciation so that both the marital and non-marital portion increases. Sure it is difficult to apply, but not impossible. If allocation of fault expressed in percentages can be determined in cases of comparative negligence in tort litigation, allocation of appreciation can also be expressed in percentages to distinguish the appreciation attributable to the efforts of a marital partner from the contributions attributable to other factors.
*59 GRIFFIN, J., concurring in result specially with opinion.
Both of my colleagues appear to be saying that where a spouse's non-marital interest in a closely held corporation appreciates during marriage, some or all of the appreciation may be marital property, depending on whether the appreciation was attributable to the labors of the separate-interest-owing spouse during the marriage, or other factors unrelated to the efforts of that spouse during marriage. This notion appears to be a fair way for the courts to deal with a problem we see fairly often. Where a closely held corporation is owned or controlled by one spouse as a non-marital asset, that spouse may manipulate the corporation's finances in order to enhance the value of the non-marital asset while depriving the marital estate of assets that ordinarily would be allocatable to it. That was the concern that motivated the decision in the Rutland case. I agree with Judge Peterson that these situations are best considered on a case-by-case basis, taking into account the factors he identified as well as others. It does seem to me, however, that since it is the spouse controlling the non-marital asset who controls the relevant evidence on this issue, and who is in the best position to adduce the relevant facts, that spouse ought to have the burden of showing the appreciation is non-marital. In this sense the result in Rutland was not wrong.
HARRIS, J., concurring in part, dissenting in part:
First, although the parties and the trial judge treated this dissolution as a Rutland case[1], a mistake for which I take sole responsibility, it is not one. Because a critical fact, the fact that the purchase money for the buy-out in Rutland came not from corporate assets but from a new corporate bank loan to be repaid solely from future corporate earnings, was unfortunately left out of our Rutland opinion, I agree that an en banc decision is necessary to correct the wrong impression made by that holding. I do not agree, however, with the majority view that the redemption of a shareholder's interest by a sub-chapter S corporation is outside the equitable reach of a domestic court.
*60 To explain my view, I resort (with all due apologies to Aesop) to the following fable:

The Bear Brothers and the Fox Brothers
In the deep woods lived Ralph and Robert Bear who conducted a partnership dealing in produce obtained from a beehive located in a nearby hollow tree. The partnership agreement contained a buy-sell provision. Robert married Honey and subsequently decided to buy Ralph's interest in the partnership. He thereafter saved a portion of all of his bonuses and salary and placed it in a bank account solely in his name.[2] From this account, Robert purchased Ralph's interest in the partnership. Sometime thereafter, Robert met Cutie and left Honey. Honey claimed half interest in that share of the partnership purchased with marital assets and Prince Owl, the beloved local magistrate, agreed.
Also living in the woods, were Si and Sly Fox who dealt in chicken products obtained from Farmer Jack's hen house. But, being aware of Robert Bear's predicament, they conducted their business as a sub-chapter S corporation with a stockholder redemption agreement. Sly married Sucha and later, although the corporation had distributed all its earnings to the shareholders in the form of dividends or salary and thus had no assets with which to fund the redemption agreement, Si wanted out.
Si suggested that Sly personally borrow the necessary money and buy his stock directly. "No, no," responded Sly. "The stock might be held to be marital property."
"Then take money from your joint bank account and put it in the corporation and have the corporation redeem the stock," urged Si.
"That would be no better," replied Sly. "The money for the purchase could be traced to marital funds and the acquisition would be deemed marital."
"Then the redemption agreement is meaningless," lamented Si.
"Not so," said Sly. "I'll have the corporation borrow the money and then repay the loan with what would be my bonuses and salary and my wife will be unable to challenge my new acquisition."
And it came to pass that while keeping his wife and children in second-hand clothing for three years, Sly was able to repay the loan and now owned 100% of the business. He then met Greatta and left Sucha. Good Prince Owl, seeing the correlation between this and the Bear case, ruled that it didn't matter which business organization was used, the acquisition was made by what should have been marital assets and held Sucha entitled to half interest in the stock purchased by the loan to be repaid from the husband's future labor and management. But Good Prince Owl was overruled by the wicked Council of Princes[3] which held that a sub-chapter S corporation, although treated remarkably like a partnership or sole proprietorship for tax and management purposes, has a magical shield which protects it from a finding that its redemption of stock might be marital property.
The moral of this fable is that when a young man goes for his blood test, he should stop by his lawyer's office and form a sub-chapter S corporation. It is more potent than a pre-marital agreement in that it cannot be challenged in court and it has the added benefit of stealth so that the prospective wife will not know what hit her until it is too late.
The second issue involves a corporate distribution made to the husband from cash retained by the corporation in an *61 amount sufficient to pay the taxes on the distribution and to put $150,000 into each of two Consults accounts with Merrill Lynch in the name of his children and himself as joint tenants with the right of survivorship. These gifts were made some four years before the dissolution of marriage action was filed. The husband contends that these accounts remain non-marital because they were established from corporate distributions of premarital retained earnings. While the wife acknowledges that the children's accounts were established from a distribution of retained corporate earnings, she nevertheless urges that since a portion of the retained earnings accumulated during the marriage, it was a "commingled" account and hence the distribution should be considered marital. She also urges a "first in, first out" analysis of the retained earnings account.
I disagree with the wife's claims that because marital income derived from the husband's labor or management was merged with premarital retained earnings that the entire retained earnings "account" becomes marital. This was not an account into which the husband deposited both non-marital and marital funds and from which he paid both marital and non-marital obligations. The retained earnings account is a corporate account which reflects, among other things, funds available to meet corporate obligations and requirements. Any excess reflected by the retained earnings account is available for distribution to shareholders in relationship to their percentage of stock ownership. Even though the retained earnings account may increase during the marriage either from passive causes or because of the labor or management of the husband, the husband individually acquires no interest in that account even though, as controlling shareholder, he may cause distributions from corporate funds which will affect that account.
But clearly the corporation has benefitted from the husband's labor or management and the wife is entitled to some consideration because of this. In giving this consideration, is it the appreciation of the husband's premarital stock or the income produced by the labor and management of the husband retained by the corporation which should be considered as a marital asset?
There are various ways for a court to recognize the contributions of a spouse's labor and management to a corporation in a dissolution of marriage action. One approach, the one adopted by the majority from which I dissent, is for the court to ignore the retained earnings account altogether and to recognize the spouse's contributions of labor and management to the corporation by treating any increase in the value of the corporate stock not caused by inflation or market conditions from the date of marriage to the date of dissolution of marriage as a marital asset. As recognized by the majority, there are many factors other than a spouse's labor and management which might affect the value of the corporation as evidenced by this case.[4] On the other hand, if we treat the corporate retained earnings accumulated after marriage as the marital asset, then we have more closely identified the corporate benefit from the husband's labor and management. And by removing the retained earnings from consideration in evaluating the stock in the marital distribution, we can avoid the problem of appreciation or depreciation of the stock unrelated to the marital relationship.[5]
*62 This case is complicated by the fact that at the time of the marriage there was a large retained earnings account in the corporation. Distributions to the husband from this premarital source of funds should be non-marital regardless of when it is distributed. Therefore, when we consider the retained earnings account as reflecting a source for distribution, we should decide what portion represents a premarital asset. How should we do this?
This will require a case by case analysis of when (in relation to the marriage) and to what extent the accumulation of the retained earnings account occurred. If a distribution comes from that portion of the retained earnings which preexisted the marriage, the distribution should be considered non-marital. If the distribution comes from that portion of the retained earnings which accumulated during the marriage, then it should be considered marital. But how do we determine the status of the retained earnings account from whence the distribution comes?
If we apply the case by case analysis to the facts of this case, the question remains as to whether the distribution in 1992 used to establish the children's accounts was a distribution of marital or premarital retained earnings. The wife argues, and the court below agreed, that the inventory accounting principle of "first in, first out" should be utilized in order to determine whether that portion of the retained earnings distributed in 1992 was premarital or marital. The wife's position is that although there were substantial retained earnings at the time of the marriage, over the years additions were made and withdrawals were taken. She convinced the court that under the "first in, first out" accounting concept it should be held that the premarital retained earnings were distributed first so that those remaining at the time of the 1992 distribution were marital. Even though "first in, first out" is a recognized method for determining the value of inventory at any given time, it has no relevance in determining how retained earnings are distributed. It is reasonable to assume in inventory evaluation, particularly for tax purposes, that a business would use its oldest inventory first in order to mitigate against obsolescence. There is no reason for such assumption in the withdrawal of retained earnings.
But there should be some assumptions (some guidelines) relating to withdrawals from corporate retained earnings when considering marital distribution. First, retained earnings subject to distribution at the time of marriage should be considered non-marital even if no distribution is taken at that time and the funds are left in the corporation for future corporate needs. This is because the controlling shareholder could distribute such funds to himself or herself prior to marriage and preserve them as non-marital. Any funds required for future corporate needs could be met by a corporate loan to be repaid from future earnings. Therefore, leaving the excess funds in the corporation as retained earnings should be considered a premarital "loan" from the controlling shareholder to the corporation. Second, it should be assumed that the corporation will meet its current obligations from current income. This means that the shareholder spouse's premarital "loan" to the corporation should be repaid from post-marriage earnings. With these assumptions, funds reflected by the retained earnings account which do not exceed those retained at the time of marriage less prior premarital distributions should be considered non-marital. This is consistent with an expectation that a shareholder would first use his marital assets to pay marital obligations before resorting to his non-marital assets.
Therefore, in order to determine whether the 1992 distribution was marital or non-marital, the court will have to determine whether the husband had taken prior distributions which were from his premarital asset and how that might have affected the retained earnings account at the time of the 1992 distribution. If any of the 1992 distribution exceeded the husband's remaining *63 premarital asset, then to that extent the children's accounts are marital assets. Further, upon dissolution of marriage, the court should consider any sums reflected in the retained earnings account available for distribution as though it was distributed. This is consistent with the earlier assumption that the controlling shareholder spouse could withdraw any excess funds from retained earnings upon marriage in order to protect his premarital asset. We should likewise assume that upon dissolution of marriage he or she can make the same kind of withdrawal. In this case, any such sums which exceed the remaining amount of the husband's premarital asset should be subject to marital distribution. It may be, because of corporate requirements, payment of such sums will have to be paid out of future earnings or from other sources.
Because the trial judge applied the "first in, first out" analysis, I agree this cause must be reversed.
NOTES
[1] Rutland v. Rutland, 652 So.2d 404 (Fla. 5th DCA 1995). We held in Rutland that the kind of business organization involved was not the test when considering marital equities. We held that an asset purchased during marriage with funds earned by the husband from his labor or management is marital whether the business organization involved was a wholly-owned corporation or a sole proprietorship. Other courts have taken this same approach. See Pannell v. Pannell, 64 Ark.App. 262, 981 S.W.2d 531 (1998) ("[U]nlike the minority shareholder obligor ... Vick is the sole owner of his S corporation and, as such, has complete control over the retained corporate earnings."). See also Absalom v. Absalom, 1991 WL 232291 (Ohio App. 9 Dist.1991), in which the court held that the retained earnings in the husband's sub-chapter S corporation could be considered as part of his disposable income because "he alone controlled the amount of his salary, bonuses, expenses, and the resulting retained earnings of his corporation." In Rutland, the source of the payment for the additional half interest in the business acquired by the corporation but which inured to Rutland's benefit was a bank loan to the corporation (thereafter owned entirely by Rutland) which had to be repaid by the corporation from future income earned from Rutland's labor and management. The traditional concept of title is immaterial in considering the equities of marital distribution. Thus courts, in order to do marital justice, ignore the status of title in real estate, personal property, and bank accounts, a status which has historically conferred rights to the title holder. We believed a corporate shelter to be no more sacrosanct than legal title when considering assets acquired from the labor or management of its sole or controlling shareholder. The court in Speer v. Quinlan, 96 Idaho 119, 525 P.2d 314 (1974), "[found] especially unsatisfactory the artificial distinction made between a separate property business organized in the form of a close corporation and an unincorporated sole proprietorship or partnership." We believed in Rutland that a husband should not be able to "shelter" what would otherwise be marital income from the legitimate expectations of his wife that the rewards from his labors would go either to create a more comfortable lifestyle or future security for the two of them. This explains, if it doesn't justify, our holding in Rutland.
[2] Editor's Note. Under sections 61.046(7) and 61.075(5)(a)1, Fla. Stat., this account, regardless of how it was titled, became a marital asset.
[3] Hey, it's my fable.
[4] Further, this approach causes the wife to risk her portion of marital benefits earned by the husband to a down market. For example, suppose the stocks would have lost X value because of market decline but, because of the high retained earnings accumulated by the husband's labor and management, lost only XY. This differential is a benefit lost by the wife.
[5] See Martinez v. Martinez, 761 So.2d 433 (Fla. 3d DCA 2000), which holds that retained earnings, at least so far as alimony and child support are concerned, is a valid source of distribution.