IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

DOCTOR ROOTER SUPPLY & SERVICE,
ETC., ET AL.,

      Appellants,

 v.                             Case No.  5D14-3498

LAURA MCVAY,

      Appellee.

_____/

Opinion filed September 7, 2017

Appeal from the Circuit Court
for Putnam County,
Patti A. Christensen, Judge.

William H. Davie, II, of The Davie Law Firm,
P.A., Green Cove Springs, for Appellants.

Adam P. Rowe, Caron Speas and Ralph
Rowe, of Speas & Rowe, PLLC, Palatka, for
Appellee.

BERGER, J.

Doctor Rooter Supply & Service, Inc. (Doctor Rooter) and Thomas J. Wall appeal

the trial court's final order granting summary judgment in favor of Laura McVay.  We

reverse.

Doctor Rooter is a plumbing company that was owned by Thomas Wall and Laura McVay while they were married. They divorced in October 2012, at which time Thomas was given full ownership of the company. As a part of their divorce proceedings, Thomas and Laura executed a Consent Final Judgment. The Consent Final Judgment included a release of all claims that Thomas and Laura had or could have had against each other.

After the divorce was final, Thomas allegedly discovered that Laura had taken approximately $116,000 from Doctor Rooter between 2007 and 2011 while she was the office manager.[1] In 2013, Doctor Rooter and Thomas sued Laura for conversion, embezzlement, breach of fiduciary duty, and civil theft. In Laura's answer to the complaint, she cited numerous affirmative defenses, based mostly on the Consent Final Judgment entered in the dissolution case. Of relevance are Laura's first, second, third, fourth, fifth, and tenth affirmative defenses.

In her first affirmative defense, Laura claimed "that the causes of action alleged in the Amended Complaint were released and waived by the Plaintiffs when the parties hereto executed the Consent Final Judgment of Dissolution of Marriage." In her second affirmative defense, Laura claimed that res judicata barred this action because the civil theft claims should have been brought in the dissolution case. Laura's third and fourth affirmative defenses alleged that the civil theft case actually involved the dissipation of marital assets and, as such, it should have been brought in family court. She, therefore, argued that the civil court lacked jurisdiction to consider the civil theft matter and that Thomas and Doctor Rooter lacked standing to bring the case. Laura's fifth affirmative defense alleged that the civil theft claims were waived because they were compulsory

---

[1] Laura disputes the allegation that she stole money from the company.

2

counterclaims in the dissolution case and they were not raised in the answer. Finally, in her tenth affirmative defense, Laura contended that the civil theft case could not proceed because, as a co-owner of Doctor Rooter, she could not be liable for stealing from herself.

Laura moved for summary judgment, arguing that the release language was dispositive and that Thomas and Doctor Rooter's claims were barred by the doctrine of res judicata. After a hearing, the trial court agreed and granted summary judgment in Laura's favor on the affirmative defenses outlined above.

In its Final Order, the court specifically found that Thomas and Laura were the only owners or equity holders in Doctor Rooter and that they treated Doctor Rooter as a marital asset during the dissolution proceedings. The court also found that Thomas and Laura mutually released any claims they had or could have had against each other as part of the consideration for the Consent Final Judgment, and thus, Thomas was precluded from bringing the action. Additionally, the court found that res judicata prevented the causes of action set forth in the amended complaint because they were previously decided in the dissolution matter and the dissolution of marriage statute is the exclusive remedy available to Thomas in this case because Laura was alleged to have dissipated marital assets. As such, the court found that it did not have jurisdiction over the matter. Also, based on the trial court's finding that the dissolution statutes controlled, it concluded that Doctor Rooter and Thomas lacked standing to bring the cause of action for civil theft.

A trial court's order granting summary judgment is reviewed de novo. Suker v. White Fam. Ltd. P'ship, 193 So. 3d 1028, 1029 (Fla. 4th DCA 2016) (quoting Burton v. MDC PGA Plaza Corp., 78 So. 3d 732, 733 (Fla. 4th DCA 2012)). In reviewing a court's decision to enter summary judgment, an appellate court "must consider all record

evidence in a light most favorable to the non-moving party. If material facts are at issue and the slightest doubt exists, summary judgment must be reversed." Mills v. State Farm Mut. Auto. Ins. Co., 27 So. 3d 95, 96 (Fla. 1st DCA 2009) (citing Hancock v. Dep't of Corr., 585 So. 2d 1068 (Fla. 1st DCA 1991)).

Doctor Rooter and Thomas raise four issues on appeal, three of which have merit.[2] First, they argue that the trial court erred in finding that the assets of Doctor Rooter, a duly formed corporation, are actually assets directly owned by its shareholders, Thomas and Laura, and, thus, any assets Laura allegedly took from Doctor Rooter were marital assets. They further argue that the trial court's mischaracterization of the theft as a dissipation of marital assets caused it to erroneously conclude that exclusive jurisdiction belonged in family court and that Doctor Rooter and Thomas did not have standing to bring the claim. Next, they argue that the trial court erred in holding that Doctor Rooter was bound by the release in the divorce proceeding when it was not a party to the proceeding, and therefore, res judicata and waiver did not bar the claims. Finally, Doctor Rooter and Thomas argue that questions of fact remain regarding the intent and understanding of Thomas and Laura when they executed the Consent Final Judgment that preclude entry of summary judgment. We will address each in turn.

As this Court has previously explained, a "stockholder's interest in a corporation is limited to the legal rights flowing from the ownership of capital stock. Those rights do not include a pro-rata interest in corporate assets." Anson v. Anson, 772 So. 2d 52, 54 (Fla. 5th DCA 2000). In fact, the corporation is a separate, legally recognized entity that holds

---

[2] Based on the facts of this case, we reject as meritless the claim that the trial court erred in granting summary judgment before discovery was complete.

4

title to its assets. Id. Although a corporation that is owned by both spouses is a marital asset, see Thibault v. Thibault, 668 So. 2d 237, 238 (Fla. 1st DCA 1996), the corporation's earnings are not marital assets. Instead, assets that are "acquired through corporate earnings are corporate assets until payments are made for services or as dividends." Anson, 772 So. 2d at 54.

Doctor Rooter is a Florida corporation that was formed by the parties during their marriage. While they were married, Thomas owned 80% of the company's stock and Laura owned 20%. Even though Thomas and Laura were the only shareholders, Doctor Rooter was a separate legal entity and its earnings belonged to the corporation until such time as Thomas and Laura received payments from it. See id. Therefore, Laura was not entitled to take money from Doctor Rooter until she received payments from the company either for services or as dividends. See id.

While Laura maintains that taking money from the company merely constituted the dissipation of marital assets, the record is not particularly clear on this point. Dissipation of marital assets occurs when "one spouse uses marital funds for his or her own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown."[3] Romano v. Romano, 632 So. 2d 207, 210 (Fla. 4th DCA 1994) (quoting Gentile v. Gentile, 565 So. 2d 820, 823 (Fla. 4th DCA 1990) (emphasis omitted)). In this instance, Thomas alleged that Laura took money from Doctor Rooter between 2007 and 2011 while she was working there. According to the amended

---

[3] We cannot tell, based on the record before us, whether Laura used the funds for purposes unrelated to the marriage or if the takings occurred during "a time when the marriage [was] undergoing an irreconcilable breakdown." Romano, 632 So. 2d at 210 (quoting Gentile, 565 So. 2d at 823).

5

complaint, when Laura took that money, it belonged to the company and was not considered to be a part of their marital funds. As such, it cannot be said that taking money from Doctor Rooter constituted the dissipation of marital assets as opposed to theft from the company. See Lopez v. Lopez, 135 So. 3d 326, 329 (Fla. 5th DCA 2013) (explaining that to qualify as dissipation of marital assets, misconduct must be intentional destruction of asset for party's own benefit and used for purpose unrelated to marriage).

Because Laura's actions do not fit within the definition of dissipation of marital assets, the dissolution statute is not the exclusive remedy available to Doctor Rooter and Thomas for Laura's alleged theft. See Beers v. Beers, 724 So. 2d 109, 117 (Fla. 5th DCA 1998) (explaining that chapter 61, Florida Statutes, provides exclusive remedy when one spouse has intentionally dissipated marital property during the marriage where no specific transaction or agreement exists between the spouses). Therefore, contrary to the trial court's findings, the family law court did not have exclusive jurisdiction to consider the theft claims. Accordingly, Doctor Rooter and Thomas had standing to bring the instant claims outside of family court, and the trial court's conclusion otherwise was error.

For the same reason, the trial court also erred when it concluded Laura could not be held liable for stealing from herself. In Florida, when a corporation has more than one shareholder, an officer/shareholder has a fiduciary duty to all shareholders. Zold v. Zold, 880 So. 2d 779, 780 (Fla. 5th DCA 2004). In other words, the corporation "is not the personal piggy bank for any one shareholder . . . ." Id. at 781.

Here, it is undisputed that Thomas and Laura were the only two shareholders with an interest in Doctor Rooter at the time Laura allegedly stole from it. However, the fact that they were married and the only two shareholders does not change the fact that Laura

6

owed a fiduciary duty to Doctor Rooter and to Thomas. See id. at 780. Moreover, Laura was not entitled to remove funds from Doctor Rooter because, at the time of the alleged theft, the funds were assets of the corporation and not marital assets to which she was entitled. See Anson, 772 So. 2d at 54. Under these circumstances, Laura was not merely stealing from herself as the lower court found. Instead, she was stealing from Doctor Rooter and Thomas. Thus, she could be held liable for civil theft and the other claims in the amended complaint.[4] See Dep't of Ins. v. Blackburn, 633 So. 2d 521, 524 (Fla. 2d DCA 1994) (rejecting sole shareholder's argument that he was stealing from himself and finding that receiver could bring claim for breach of fiduciary duty and civil theft against him because other creditors and policy holders may have been divested of money he took). Consequently, summary judgment was improperly granted on Laura's claim that she could not be held liable for stealing from herself.

Doctor Rooter and Thomas next argue that the trial court erred in holding that Doctor Rooter was bound by the release in the divorce proceeding as it was not a party to the proceeding and therefore, res judicata and waiver did not bar their claims. As the Florida Supreme Court explained, "[t]he foundation of res judicata is that a final judgment

---

[4] The trial court's reliance on Hinkle v. State, 355 So. 2d 465, 467 (Fla. 3d DCA 1978) (holding "a co-owner of a joint bank account cannot be guilty of larceny of funds held in the joint account[]") (citation omitted), Russ v. State, 830 So. 2d 268, 270 (Fla. 1st DCA 2002) ("A co-owner of property cannot be held guilty of larceny of such property unless the other co-owner has a superior legal interest that authorizes the withholding of the property." (citation omitted)), and Dimuccio v. D'Ambra, 750 F. Supp. 495, 501 (M.D. Fla. 1990) (concluding plaintiffs' allegations did not meet the elements of civil theft because the party who took the money was a co-owner of the property), is misplaced. Contrary to the trial court's findings, these cases are distinguishable and do not support summary judgment. None of the cases involve a shareholder of a closely held corporation being sued for civil theft for taking money from the corporation. Rather, they simply stand for the proposition that a co-owner of property cannot be held liable for taking that property when he has a superior legal interest in the property.

7

in a court of competent jurisdiction is absolute and settles all issues actually litigated in a proceeding as well as those issues that could have been litigated." Engle v. Liggett Grp., Inc., 945 So. 2d 1246, 1259 (Fla. 2006). The Supreme Court further described res judicata as follows:

> A judgment on the merits rendered in a former suit between the same parties or their privies, upon the same cause of action, by a court of competent jurisdiction, is conclusive not only as to every matter which was offered and received to sustain or defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action.

Id. (quoting Dep't of Transp. v. Juliano, 801 So. 2d 101, 105 (Fla. 2001) (emphasis omitted)).

Contrary to the trial court's conclusion otherwise, res judicata would not bar Doctor Rooter's and Thomas' civil theft claims against Laura because the theft case and the dissolution proceedings are not based upon the same cause of action. This fact remains even if Doctor Rooter were a party to the dissolution proceeding because the dissolution case only involved matters stemming from Thomas and Laura's divorce and did not include claims regarding Laura taking money from Doctor Rooter.

Moreover, questions of fact remain over Laura's res judicata defense. According to the amended complaint, Thomas learned about Laura's theft from Doctor Rooter after an audit was completed in 2013, which was after the parties' divorce was finalized in October 2012. Laura's affidavit, on the other hand, indicates that Thomas threatened to sue her for civil theft during their divorce proceedings. Thus, a question of fact remains about when Doctor Rooter and Thomas learned of the theft and whether they could have

8

brought the claim as a part of the divorce proceedings.[5]  As such, it was improper for the trial court to enter summary judgment on Laura's res judicata defense.

Laura's argument that Thomas and Doctor Rooter released and waived their civil theft claim by signing the Consent Final Judgment also fails.  To establish waiver, a party must show: "(1) the existence at the time of the waiver of a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge of the right; and (3) the intention to relinquish the right."  Goodwin v. Blu Murray Ins. Agency, Inc., 939 So. 2d 1098, 1104 (Fla. 5th DCA 2006) (citing Zurstrassen v. Stonier, 786 So. 2d 65, 70 (Fla. 4th DCA 2001)).  When a claim of waiver is based on a release contained in a contract, the reviewing court must construe the release and determine the intent of the parties by reviewing the entire instrument.  Cerniglia v. Cerniglia, 679 So. 2d 1160, 1164 (Fla. 1996). Like any other contract, "where the language of a release is clear and unambiguous a court cannot entertain evidence contrary to its plain meaning."  Id. (citing Sheen v. Lyon, 485 So. 2d 422, 424 (Fla. 1986)).

Here, paragraph 18 of the Consent Final Judgment reads as follows:

> 18) EFFECTIVE DATE OF AGREEMENT HEREIN, ENTIRE AGREEMENT AND NON-MERGER: Both parties had acknowledged that the agreement contained in this Consent Final Judgment shall be enforceable and binding upon the parties as of the date the last party signed this document below . . . .  Further, by signing this Agreement, the parties have agreed that his [sic] document shall be construed and enforceable as a Settlement Agreement whether entered as an order of the Court or not. That is, they each have agreed to be bound by terms of this Agreement and each has acknowledged that he/she has agreed to the same for good and valuable consideration. The parties have agreed that this Agreement constitutes a full and final settlement of all pending

---

[5] If Thomas knew about the theft during the divorce, it is possible res judicata could bar the theft claim.  If, however, Thomas learned of the theft in 2013, he could not have brought the claim during the divorce and res judicata would not bar the claim.

> and current issues between them and they hereby each release each other from any claims which could have been resolved in this action of [sic] in this Judgment, except as provided herein. The parties have agreed that once this Consent Final Judgment is entered by the Court, the agreement . . . shall remain separately enforceable as a binding agreement between the parties . . . .

(Emphasis added). Thomas and Laura, their attorneys, and the family court judge are the only people who signed the Consent Final Judgment. No one signed it on behalf of Doctor Rooter. As such, because it is clear that Thomas and Laura are the only parties to the Consent Final Judgment, they are the only parties bound by the release in paragraph 18. Therefore, Doctor Rooter was free to bring the theft suit against Laura.

Regardless, summary judgment on the waiver issue was improper because material issues of fact remain. The release states that it covers "any claims which could have been resolved in this action [or] in this Judgment." As stated earlier, there is conflicting evidence regarding when Doctor Rooter and Thomas learned about the civil theft. According to Laura, they learned about it while the divorce was pending. However, Thomas claims that they learned of the embezzlement after the divorce was final. If Thomas is believed, Doctor Rooter and Thomas could not have brought the theft claim as a part of the divorce because they did not know about it.[6] Therefore, summary

---

[6] A party's failure to raise a compulsory counterclaim will result in the waiver of that claim. Londono v. Turkey Creek, Inc., 609 So. 2d 14, 18 (Fla. 1992). In this case, the trial court determined that the claims for conversion, embezzlement, breach of fiduciary duty, and civil theft were compulsory counterclaims in the dissolution of marriage case and were waived because they were not raised as counterclaims in that case. However, the claims in the amended complaint would be compulsory counterclaims to the dissolution case only if they arose from the same aggregate facts. See id. Here, the theft claims brought in the amended complaint have no logical relationship to the dissolution case, which arose from Thomas and Laura's inability to remain married. Thus, it was error for the lower court to find that they were waived by Thomas' failure to raise them in the divorce proceeding.

judgment should not have been granted on this basis.  See Scheibe v. Bank of Am., N.A., 822 So. 2d 575, 575 (Fla. 5th DCA 2002) (finding summary judgment improperly granted on waiver issue where questions of fact remain); Parker v. Dinsmore Co., 443 So. 2d 356, 358 (Fla. 1st DCA 1983) (reversing entry of summary judgment where questions of fact remain on waiver issue).

For the reasons stated above, we conclude the trial court erred in granting summary judgment on Laura's first, second, third, fourth, fifth, and tenth affirmative defenses.  Accordingly, we reverse the final order under review and remand for further proceedings.

REVERSED and REMANDED.

EDWARDS, J. and JACOBUS, B.W., Senior Judge, concur.

11